UNITED STATES of America, Plaintiff,

v.

Sidney A. BRODSON and Steven J. Halmo, Defendants.

No. 74-Cr-98.

United States District Court, E. D. Wisconsin.

Jan. 31, 1975.

Gregory Ward, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Gimbel, Gimbel & Reilly, by Richard Reilly, Milwaukee, Wis., for Halmo.

Shellow & Shellow, by James Shellow, Milwaukee, Wis., for Brodson.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The defendants are charged in the first count of this indictment with conspiracy to violate 18 U.S.C. § 1084. The remaining six counts reallege the overt acts listed in count one. The defendants have filed a large number of motions. Discovery, severance, dismissal and suppression of evidence represent the objects thereof. I conclude that such motions should be denied.

### I. DISCOVERY MOTIONS

#### A. Motions for Bills of Particulars

Both defendants have filed motions for bills of particulars pursuant to Rule 7(f), Federal Rules of Criminal Procedure. They maintain that they are entitled to know the theory of the government's case, but that absent answers to a number of questions, such theory remains ambiguous. The government has responded to the defendants' inquiries which do not call for evidentiary matter. In my judgment, the indictment sufficiently apprises the defendants of the essential facts which constitute the offenses charged. Furthermore, the government's "open file" policy has given the defendants equal access to the information sought. Accordingly, I conclude that the defendants' motion for bills of particulars should be denied. United States v. Cullen, 305 F.Supp. 695 (E.D.Wis.1969).

#### B. Motion to Disclose Reports

In order to determine whether the order was complied with, the defendant Brodson has moved that the court order the government to disclose those progress reports which it was required to file pursuant to the electronic surveillance order of Judge Fairchild dated November 26, 1973. The government opposes such disclosure on the grounds that "these [progress] reports are solely for the consideration of the authorizing judge and that defendant has more than ample information to deter-

mine compliance with the court order." The progress reports represent but summaries of the monitored conversations which are available in full for firsthand examination by the defendants. Also, an authorizing judge had broad discretion and can dispense with such progress reports entirely. Therefore, I conclude that the defendant Brodson's motion should be denied. See United States v. Iannelli, 477 F.2d 999,. 1002 (3rd Cir. 1973); United States v. LaGorga, 336 F.Supp. 190, 194 (W.D.Pa.1971).

## C. Motion for Disclosure of Exculpatory Facts

■ Citing Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Mr. Brodson has filed a motion for disclosure of exculpatory facts. He also seeks "any facts known to the government tending to impair the credibility of its witnesses, including but not limited to the substance of any agreement reached or discussed between attorneys for the government and attorneys for such witnesses." In response to such motion, the government states that "it has made available all requested discovery material and is aware of its continuing burden under *Brady*. . . . Further, the government is aware of its obligation to make available to defense counsel statements of witnesses at time of trial. Title 18 United States Code, Section 3500." The defendants remain free to challenge the credibility of the government's witnesses upon cross-examination. Under these circumstances, I conclude that the defendant Brodson's motion for disclosure of exculpatory facts should be denied.

## D. Motion for Discovery and Inspection

■■ The defendant Brodson seeks discovery of the defendants' recorded statements, the results of scientific tests, "warrants", the defendants' grand jury testimony and the physical evidence to be introduced at trial. The government indicates that "all such material, with the exception of grand jury testimony, is contained in the government's file, which has been open for inspection by defendants since the return of the indictment in this case. Grand jury testimony of defendant Brodson is available for inspection and copying by the individual who testified." Under these circumstances, I conclude that the defendant Brodson's motion for discovery and inspection should be denied.

## E. Motion for Disclosure of Electronic Surveillance

Pursuant to 18 U.S.C. §§ 2515 and 2518(8)(d), and Rule 16(a), Federal Rules of Criminal Procedure, Mr. Brodson has filed a blanket motion for disclosure of all electronic surveillance of him, persons acting on his behalf and his attorneys.

■ The government correctly notes that unless Mr. Brodson's counsel can in some fashion document his suspicions that the government has been listening in on his telephones, the government is under no obligation to determine whether such suspicions are justified. United States v. Alter, 482 F.2d 1016 (9th Cir. 1973). The foregoing is true notwithstanding Mr. Brodson's generalized contention that

"The government's position may have had some validity in an era when a presumption of regularity and candor concerning the activities of Department of Justice employees could be invoked. Defendant respectfully asserts that he uses his telephones to converse about matters of interest to the Department of Justice and that this fact alone should be sufficient to require the government to disclose whether counsel has been subjected to electronic surveillance."

The government has agreed to advise the defendant Brodson whether he was subject to electronic surveillance, in accordance with its obligation under Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

## II. SEVERANCE MOTIONS

### A. Motions to Sever Defendants

Citing United States v. Martinez, 486 F.2d 15 (5th Cir. 1973), the defendant Brodson has moved this court for an order severing his trial from that of defendant Halmo on the grounds that Mr. Brodson's defense requires Mr. Halmo's testimony. The motion is supported by affidavits from Mr. Brodson and his attorney which: 1) purport to show that Mr. Halmo's testimony would be exculpatory; 2) indicates Mr. Halmo's willingness to testify in a trial in which he is not a defendant; and 3) sets forth Mr. Halmo's refusal to testify in a joint trial.

The government's position is that Mr. Halmo's explanation of his conversations with Mr. Brodson would not really be exculpatory unless Mr. Halmo were prepared to testify that such conversations were in code and did not concern gambling. The prosecution then asserts:

> "Since defendant Halmo has not indicated that his testimony will be exculpatory in that his conversations with Brodson did not involve betting or wagering, the value of his testimony is not sufficient to warrant severance of defendants."

 In United States v. Isaacs, 493 F.2d 1124, 1160 (7th Cir. 1974), the court of appeals for this circuit held that severance is required when the defendant will in fact be unable to have a fair trial in the absence of the codefendant's testimony. Standing alone, Mr. Halmo's statement that the defendant Brodson "is not and was not engaged in the business of betting or wagering" does not appear to be so exculpatory in nature that its absence would deny Mr. Brodson a fair trial; this follows from the fact that the taped Halmo-Brodson wagering conversations are not fully explained by such a statement. In my judgment, the defendant Brodson would have to come up with an offering similar to the one suggested by the government before Mr. Halmo's testimony would acquire an exculpatory dimension sufficient to justify severance. The defendant Halmo's motion to sever defendants suffers from the same deficiencies.

### B. Motion to Sever Counts

 The defendant Brodson has also filed a motion for on order severing the trial of the conspiracy charge (count 1) from the trial on the substantive charges (counts 2 through 7) upon the grounds that the conspiracy charge is so complex that the jury could not keep the offenses distinct. I conclude that the motion to sever counts should also be denied. The conspiracy charge and the substantive charges are of similar character and are based on the same alleged acts or transactions. See Rule 8(a), Federal Rules of Criminal Procedure. Moreover, the defendants in all counts are the same, and the dates of the alleged conspiracy coincide with the dates of the substantive offenses. Under these circumstances, the prospect of any prejudice from such joinder of counts is minimal.

## III. MOTIONS TO DISMISS

### A. Motion to Dismiss I

 The defendant Brodson has moved to dismiss all or portions of this indictment on nine grounds. First, he claims that 18 U.S.C. § 1084 is unconstitutionally vague in that the language "engaged in the business of betting or wagering" is such that persons of ordinary intelligence must guess at its meaning. However, the district court in United States v. Smith, 209 F.Supp. 907, 917 (E.D.Ill.1962), rejected the same type of challenge. See generally, Bohn v. United States, 260 F.2d 773 (8th Cir. 1958), cert. den. 358 U.S. 931, 79 S.Ct. 320, 3 L.Ed.2d 304; Kahn v. United States, 251 F.2d 160 (9th Cir. 1958), cert. den. 356 U.S. 918, 78 S.Ct. 701, 2 L.Ed.2d 714.

 Mr. Brodson's second ground for dismissal is that the indictment does not sufficiently notify him of the charges against him. Insofar as this indictment follows the language of the statute, it

fulfills the requirements of Rule 7(c), Federal Rules of Criminal Procedure.

 Third, the defendant Brodson challenges the indictment as being "defective for multiplicity in pleading" because each date in the indictment occurred "on or about" the date of each other. As Mr. Brodson's counsel notes, however, the date of an offense as presented within an indictment is not a material allegation. Russell v. United States, 429 F.2d 237 (5th Cir. 1970). Furthermore, the government maintains that "[e]ach interstate use of a telephone facility is a violation of § 1084. . . . The government has charged six separate offenses on or about the dates specified and the government intends to prove six distinct violations. . . ."

 In a fourth and related argument the defendant Brodson maintains that the indictment affords no protection against future prosecutions for similar offenses during the period of time covered by the indictment. In the disposition of a double jeopardy claim, the record of any previous trial must be considered along with the indictment. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). In my judgment, the defendant is adequately protected against future prosecution for those uses of telephone facilities which are considered here.

 Fifth, Mr. Brodson maintains that dismissal is required because the indictment pleads conclusions rather than facts in failing to specify the conversations transmitted interstate. In my judgment, the exact words used by the sender or receiver are no more critical to a conviction under 18 U.S.C. § 1084 (use of interstate facilities to transmit wagering information) than they are for a conviction under 18 U.S.C. § 1955, which prohibits the use of interstate facilities to facilitate a gambling business. See United States v. Lookretis, 385 F.2d 487 (7th Cir. 1967); Turf Center, Inc. v. United States, 325 F.2d 793 (9th Cir. 1963).

Sixth, the defendant Brodson asserts that counts two through seven of the indictment are defective because

"each of these counts alleges that the named defendants 'did knowingly *use or cause to be used* wire communication facilities' and that the use of the disjunctive, particularly in an indictment in which a defendant is charged as being both a principal and an aider and abettor, permits a jury finding on less than unanimous agreement as to the acts performed by the defendant which constitute the substance of the offense." (emphasis added).

 "To remove all ambiguity" the government has indicated its willingness to have stricken as surplusage the words "use or." There is authority that an amendment is appropriate if it results in no prejudice to the defendant, such as broadening the charge or charging a different offense. Vincent v. United States, 337 F.2d 891 (8th Cir. 1964), cert. den. 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281 (1965). However, the defendant Brodson claims that

"In none of the cases cited by the government [in support of its surplusage deletion proposal] was the charge *disjunctively* pleaded; in each the court permitted the striking as surplusage of an allegation which was pleaded in the *conjunctive* and upon which the grand jury must therefore have voted." (emphasis added).

 I do not believe that any prejudice will be sustained by the defendant because of the language contained in counts two through seven of the indictment. By indicting the defendant for the "use" of a telephone to violate the statute, the grand jury necessarily found that he had "caus√(d) [such facility] to be used." Accordingly, I decline to dismiss these counts or to treat as surplusage the words "use or" in such counts of the indictment.

## B. Motion to Dismiss II

In what is entitled his "Motion to Dismiss Indictment II," the defendant Brod-

son raises the seventh and eighth grounds for dismissal. He claims that:

"the evidence submitted to the grand jury, upon which this indictment was returned, was secured in violation of 18 U.S.C. § 2518; and further that such evidence was derived from testimony given by Brodson pursuant to a transactional grant of immunity before a grand jury convened by the Circuit Court of Milwaukee County, Wisconsin."

On June 20, 1972, Mr. Brodson appeared as a witness before a Milwaukee County grand jury. When asked to tell all he knew "about commercial gambling activities in Milwaukee County and other counties in the state of Wisconsin," he asserted his privilege against compulsory incrimination and was granted immunity pursuant to the provisions of § 885.15, Wis.Stats. (1971). He then responded to questions concerning his placing bets on football games and his relationship with other persons who placed bets and accepted wagers on such games.

Through his counsel, the defendant Brodson now avers that he

"has reason to believe and does believe that the inquiries of Brodson before that grand jury were prompted by and derivative of a telephone interception of telephone calls placed from a public telephone booth at the corner of Edgewood and Downer in the city of Milwaukee, State of Wisconsin."

Further, he asserts that the government cannot exploit what it learned as a result of his compelled testimony under the immunity grant. Accordingly, he seeks a hearing or an in camera inspection of the government's file to determine whether such testimony was utilized by the government in securing the wiretap authorization which is involved in this case.

I conclude that whatever use the government made of the defendant's 1972 grand jury testimony in connection with the investigation of this particular case did not constitute inappropriate exploitation.

The earliest date in the indictment is November 25, 1973, and refers to offenses committed after the immunized testimony of June 20, 1972. As the district court stated in United States v. American Radiators & San. Corp., 278 F.Supp. 608, 612 (W.D.Pa.1967), "[i]mmunity statutes provide no protection against prosecution for unlawful activities engaged in subsequent to the compelled testimony." The fact that Mr. Brodson testified under immunity with respect to past conduct did not give him license to engage in such conduct in the future.

With respect to Mr. Brodson's averment that an illegal wiretap preceded and precipitated the state grand jury proceedings in 1972, it should be noted that such averment is entirely conclusory. The broad nature of the state's questions during the grand jury proceedings certainly fails to corroborate the defendant's contention that such questions referred to specific information obtained previously through illegal eavesdropping. Absent more particularized or persuasive grounds, I decline to consider further the defendant's conclusory allegation that the information obtained during the 1972 state grand jury proceedings was anticipated as a result of information obtained through illegal wiretaps. The legality of the electronic surveillances which were had in the investigation of this case is discussed in connection with the defendants' motions to suppress.

C. Motion to Dismiss III

In his "Motion to Dismiss Indictment (III)", the defendant Brodson challenges the validity of this indictment insofar as it was returned by a grand jury before which there appeared a special attorney of the department of justice rather than the United States attorney for this district or one of his assistants. The government contends that the special attorney was authorized to appear before the grand jury pursuant to 28 U.S.C. § 515(a), and that he was an "attorney for the government" within the meaning

of Rule 6(d), Federal Rules of Criminal Procedure. Section 515(a) provides as follows:

"The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought."

In support of his motion, the defendant Brodson relies on two recent opinions in United States v. Williams, 65 F.R.D. 422 (W.D.Mo., case number 74–Cr–47–W–1, decided November 15, 1974, and December 3, 1974). In *Williams*, the district court was faced with a situation where the government "could not state whether former Deputy Attorney General Kleindienst did or did not sign . . . [the] letter of appointment as . . . special attorney." 65 F.R.D. at 433. Concerning whether such special attorney had been "specifically directed" to act, pursuant to § 515(a), the court noted that the special attorney "on his own initiative, and without prior authority from anyone, added the words 'and other offenses mentioned therein' to the oath of office." 65 F.R.D. at 435. Moreover, serious questions of preindictment delay and possible prosecutorial misconduct were present in *Williams*, since the case had been presented to three grand juries before the return of a true bill.

Lacking what it considered to be a sufficient factual basis upon which it could determine whether the special attorney had been duly "appointed" and "directed" pursuant to § 515(a), and alert to possible Brady v. Maryland, 363 U.S. 83, 104, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) violations, the district court ordered the government to disclose certain confidential information for purposes of *in camera* inspection. When the government "respectfully declined" to respond to such disclosure request, the court dismissed the indictment.

Although the court in *Williams* raised the question presented by the defendant, the issue was not directly resolved by the court. Significantly, at p. 436 of its slip opinion dated November 15, 1974, the district court in *Williams* indicated that:

"It has therefore been obvious from the outset that if the [delegation of authority] principles stated in United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), are not applicable to Section 515(a), as they were held in that case to be applicable to 18 U.S.C. § 2516(1), the government might be able to sustain the lawful authority of [special attorney] Mr. Schulke to appear before the Western District of Missouri grand jury which returned the indictment in this case if it could establish (1) that the Attorney General had power to delegate and had properly delegated the authority vested in him by Section 515(a) to some qualified person and (2) that the person or persons to whom that delegation had lawfully been made had in turn lawfully exercised the delegated power (a) to specially appoint Mr. Schulke and (b) to specifically direct Mr. Schulke, all as required by Section 515(a)."

In the case at bar, the special attorney's authority and directions derive from a letter addressed to him, dated December 27, 1973, and signed by assistant attorney general Henry E. Petersen. United States v. Hall, 145 F.2d 781, 785 (9th Cir. 1944); Shushan v United States, 117 F.2d 110, 114 (5th Cir. 1941), cert. denied, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1351, reh. denied, 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed. 564. Moreover, those circumstances in *Williams* which gave rise to possible Brady v. Maryland problems are not present here. In my judgment, disclosure of

justice department interdepartmental correspondence and records is not required in order for this court to determine whether the special attorney was duly authorized to conduct grand jury proceedings, pursuant to 28 U.S.C. § 515(a).

■■■ The sole issue is whether assistant attorney general Henry E. Petersen was authorized and empowered to commission the special attorney in this case. I conclude that he was. Title 28 U.S.C. § 510 is entitled "Delegation of Authority" and provides:

> "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

Prosecutions for federal crimes not otherwise specifically assigned to another officer of the department of justice and the coordination of enforcement activities directed against organized crime and racketeering have been delegated by the attorney general to the assistant attorney general in charge of the criminal division. 28 C.F.R. § 0.55. He, in turn, is authorized to designate attorneys to present evidence to grand juries in all cases under his supervision. 28 C.F.R. § 0.60. See also, May v. United States, 236 F. 495 (8th Cir. 1916).

In United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), the United States Supreme Court determined that for an assistant attorney general to authorize a wiretap, he had to have been "specifically designated" by the attorney general, pursuant to 18 U.S.C. § 2516. The delegation of authority provisions of 28 U.S.C. § 510 were deemed to have been superceded by § 2516. However, no legislation exists which supercedes § 510 in the context of this case. See also United States v. Robinson, 359 F.Supp. 52 (S.D.Fla.1973). I conclude, there-

fore, that the defendant Brodson's "motion to dismiss III" should be denied.

## IV. MOTIONS TO SUPPRESS

The defendants Brodson and Halmo have moved to suppress evidence obtained in searches of their persons and of the premises located at 716 South 7th Street, Milwaukee, Wisconsin, and 2420 East Stratford Court, Shorewood, Wisconsin, on the grounds that: 1) the search warrants authorizing these searches were based upon information obtained from challenged electronic surveillances which were authorized by Circuit Judge Thomas E. Fairchild on November 24, 1973 (Misc.App.#6), and by District Judge John W. Reynolds on December 30, 1973 (Misc.App.#11); and that 2) property was seized which was not described in the warrant. The defendant Brodson also challenges the sufficiency of the showing of probable cause in the search warrant affidavits.

■■■ In a decision and order dated December 12, 1974, in United States v. Halmo et al., 386 F.Supp. 593 (E.D.Wis., case number 74–Cr–101), I determined that those orders for the interception of wire and oral communications which were based on miscellaneous applications #6, #9, and #11 were valid. I specifically found that 1) the justice department's authorizations to obtain such orders were consistent with 5 U.S.C. §§ 3345–3349 and proper under 18 U.S.C. § 2516; 2) there existed sufficient probable cause pursuant to 18 U.S.C. §§ 2518(1) (b) and 2518(3)(a), (b) and (d); and 3) there was a sufficient showing of past investigative procedures. 18 U.S.C. §§ 2518(1)(c) and 2518(3)(c). In my opinion, those conclusions remain valid and in the context of this case.

■■■ The defendant Brodson additionally charges that because at the time of its wiretap applications the government had probable cause to believe that he was betting with the defendant Halmo, he should have been named as a sub-

784

ject of the electronic surveillance in accord with United States v. Kahn, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). The mere fact that at the time of the applications (November and December of 1973), Mr. Brodson was known as a bettor does not mean that he was believed to be a member of the gambling business itself.

 With respect to the defendants' second area of contention—that property not covered by the warrants was seized and that property was seized from areas not covered by the warrants—it should be noted that the defendants' allegations are general and conclusory. Furthermore, the government has indicated that it "intends to offer into evidence only those items seized which were specifically listed or which were 'gambling paraphernalia' as covered by the warrants."

Regarding the propriety of the search warrants, Mr. Brodson claims that there was insufficient probable cause to show that he was part of the gambling business. I have examined the affidavit in support of the search warrant and conclude that sufficient facts are averred therein to indicate that at the time the search warrant was issued, on January 11, 1974, there existed probable cause to believe that Mr. Brodson was acting as an advisor to the defendant Halmo and not merely as a bettor. See United States v. McHale, 495 F.2d 15 (7th Cir. 1974).

The defendant Brodson has raised other technical grounds in support of his challenge to the validity of the searches and seizures involved here. His mere request for an evidentiary hearing to determine if the signatures on the letters of authorization for the wiretaps are genuine is unsupported. See United States v. Doolittle, 341 F.Supp. 163 (M.D.Ga.1972). His challenge to the constitutionality of 18 U.S.C. § 1955 and to the validity of the presumption contained in § 1955(c) are also without merit. See United States v. Fino, 478 F.2d 35 (2nd Cir. 1973). Finally, his

challenge to the facts averred in the affidavits in support of the various electronic surveillance and search warrant applications does not persuade me that a hearing is required.

Therefore, it is ordered that the defendants' pretrial motions for discovery, severance, dismissal and the suppression of evidence be and hereby are denied.