**UNITED STATES of America, Plaintiff,**

**v.**

**David WILLIS, et al., Defendants.**

**No. CR 83–204.**

United States District Court, N.D. Ohio, E.D.

Jan. 27, 1984.

Amending Order Jan. 30, 1984.

Asst. U.S. Atty., Joseph Schmitz, Cleveland, Ohio, for plaintiff.

Stewart I. Mandel, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

Petitioner David Willis has been charged with violation of 21 U.S.C. § 841(a)(1),[1] and 18 U.S.C. § 2.[2] In gathering evidence to present to the Grand Jury which eventually came down with an indictment against the petitioner for the aforementioned crimes, the government conducted an electronic surveillance of extension (216) 421–8106, at 2229 East 100th Street, Cleveland, Ohio. Willis was indicted on August 3, 1983. According to the government, the allegedly illegal transactions which underlie six of the seven counts of the indictment took place months before the inception of the court-authorized wiretap. *See* Government's Response to Defendant David Willis' Motion for Production of Progress Reports, January 6, 1984, p. 3.

In connection with the above-captioned criminal prosecution, on October 26, 1983, petitioner filed a Motion to Produce Copies of all Electronic Eavesdropping Transcripts and Applications. The government, in its

---

**1.** Relevant portions of subsection 841(a)(1) are as follows:
    (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

**2.** Relevant portions of Section 2 are as follows:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

response, objected to that part of petitioner's Motion wherein petitioner requested copies of the interim status reports prepared by government investigators on the ground that, in his brief, petitioner had made no factual showing that production of 18 U.S.C. § 2518(6) reports would be "in the interest of justice," as dictated by 18 U.S.C. § 2518(8)(d).[3]

At a Tuesday, November 22, 1983 pre-trial conference, government counsel stated that, with the exception of the interim reports the government investigative force had submitted to the courts which had issued the electronic surveillance orders, the government had handed over all discoverable materials demanded by defense counsel. Defense counsel claimed that it was likely that the electronic surveillance was illegally extended and that those interim reports would contain evidence of the illegality. Defense counsel also maintained that the reports possibly contained exculpatory evidence. At the pre-trial conference, the government, asserting that disclosure of the interim reports was not warranted, demanded that the defendant make a showing of necessity and materiality with regard to their disclosure.

Pursuant to the aforementioned pre-trial conference, petitioner submitted for this Court's consideration its Motion for Production of 18 U.S.C. Section 2518(6) Progress Report(s).[4] Said Motion is before the Court for resolution.[5]

The Court has concluded that petitioner has made a showing sufficient to necessitate that the government submit said reports to the Court for an *in camera* inspection to determine whether petitioner ought to be allowed access to them.

## DISCUSSION

### I.

Under 18 U.S.C. § 2518(6), the supervising judge may require the governmental entity which sought authorization for an electronic surveillance to make a status

---

3. Subsection 2518(8)(d) reads as follows:

\*    \*    \*    \*    \*    \*

(d) Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518(7)(b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of—
(1) the fact of the entry of the order or the application;
(2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and
(3) the fact that during the period wire or oral communications were or were not intercepted.
*The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice.* On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed. (Emphasis added.)

4. Subsection 2518(6) reads as follows:

§ 2518. *Procedure for interception of wire or oral communications*

\*    \*    \*    \*    \*    \*

(6) Whenever an order authorizing interception is entered pursuant to this chapter, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require.

In keeping with the requirements of this subsection, on at least two occasions, the United States Attorney's Office was obliged to file, with the same courts which had issued the February 22, 1982 and March 25, 1982 Orders authorizing special agents of the Federal Bureau of Investigation and the Drug Enforcement Administration to intercept telephone communications at the aforementioned telephone extension, periodic reports detailing the progress made in the investigation and explaining the need for continuing the electronic surveillance.

5. Petitioner filed a number of other pre-trial motions with the Court on October 26, 1983. At the November 22, 1983 pre-trial conference, the Court was informed that the parties had themselves resolved the disputed issues delineated in the motions. Consequently, those motions are no longer pending before the Court.

report. Before extending the date for the court-authorized electronic surveillance, the supervising court may review such a report to determine whether the surveillance was being carried out in accordance with the rules laid out in § 2518 and with a minimal amount of intrusion into the surveillance subjects' lives. The supervising court also considers any such interim report in determining whether there is good cause to continue using electronic surveillance as an investigatory method. *See United States v. Kahn*, 415 U.S. 143, 94 S.Ct. 977, 3 L.Ed.2d 225 (1973).

Generally, an accused does not have free access to the prosecution's entire file. According to the court in *United States v. Williams*, 580 F.2d 578, 585 (D.C.Cir.1978), *cert. denied* 439 U.S. 832, 99 S.Ct. 112, 58 L.Ed.2d 127 (1978), "an accused has no right to rummage in government files." Once an accused has made a preliminary showing of need, "the extent of discovery is left to the discretion of the district court." *United States v. Kail*, 612 F.2d 443, 448 (9th Cir.1979), *cert. denied* 446 U.S. 912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980).

In the instant case, petitioner has an interest in determining whether the supervising courts to whom government investigators submitted § 2518(6) progress reports erred in extending the investigators' court-authorized wiretaps. Furthermore, petitioner suggests that the interim reports he wishes to review contain exculpatory evidence. Petitioner's brief in support of his Motion includes almost no factual basis for his discovery request. Petitioner alleges that the government, in its applications and interim reports outlining the need for the Title III intrusion, may have depicted petitioner as a significant figure in Cleveland area drug trafficking when, in fact, he is not. Petitioner suggests that the supervising courts may have based their authorizations of the initial electronic surveillances, or of their extensions, on government agents' mischaracterization of petitioner. Petitioner's approach suggests that if, upon review of the § 2518(6) reports, he discovers a factual basis for such a motion,

he will move to suppress the evidence procured by way of electronic surveillance on the grounds that either one or both of the extensions granted based on the interim reports in question were improperly granted, and that evidence procured as a consequence of such extensions, or any improper initial authorizations, must be suppressed pursuant to § 2518(10). Although, as yet, the factual basis for his discovery request is not clear, petitioner refers the Court to *United States v. Kahn*, 415 U.S. 143, 154–55, 94 S.Ct. 977, 983–984, 3 L.Ed.2d 225 (1974), and the Supreme Court's summary of the important function such interim status reports serve:

> [N]either the statute nor the wiretap order in this case would allow the federal agents ... total unfettered discretion [to use the wiretap authorization as a general warrant] .... and the order limited the length of any possible interception to 15 days, *while requiring status reports as to the progress of the wiretap to be submitted to the District Judge every five days, so that any possible abuses might be quickly discovered and halted.* (Emphasis added.)

The Court is reminded that the interim reports that are the object of petitioner's motion may contain explicit accounts of, or indirect allusions to, irregularities in the application for, authorization or implementation of the electronic surveillances conducted by government investigators in connection with the instant case.

As a general rule, an accused cannot expect to succeed on his discovery motion if he makes no factually based showing of need or materiality. According to the court in *United States v. Conder*, 423 F.2d 904, 910 (6th Cir.1970), *cert. denied* 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970), an accused cannot gain access to materials in government files by making mere conclusory allegations that the information requested is material to the preparation of his defense. However, courts have also recognized the absurdity of requiring the accused to articulate a factual basis for his claim that his Fourth

Amendment rights protecting him against unlawful searches and seizures have been violated when he, in his informational vacuum, has no access to the very documents that could substantiate his allegations.[6] An accused cannot be expected to outline with any specificity in a motion for production of documents the nature of any Fourth Amendment breaches government investigators may have recounted in their reports. Any articulation of possible search and seizure violations would be speculative since, in all likelihood, the accused would not have been privy to the manner in which the covert criminal investigation which resulted in his indictment had been conducted. The court in *United States v. Manusczak*, 438 F.Supp. 613, 621 (E.D.Pa.1977), confronted with the task of evaluating the strength of an accused's disclosure petition, concluded as follows:

> It is difficult to believe that a party would ever be able to file "definite, specific, detailed and nonconjectural" moving papers so as to obtain a hearing if he is not provided with a copy of the written application and order.

The same holds true in the instant case. Furthermore, in light of the paucity of information to which an accused is privy when he is the focus of a criminal investigation, a requirement that an accused's production request not only identify what portion(s) of the government's file he seeks, but also detail the substance of such reports, would most likely encourage criminal defendants to contrive requests with fictional factual bases. This court follows innumerable others in condemning such fishing expeditions conducted under the guise of discovery.

This Court does not wish to encourage the filing of "shotgun motions," where moving parties seeking disclosure make blanket demands without attempting to delineate the material sought. *See United States v. Hughes*, 413 F.2d 1244, 1254 (5th Cir.1969). Rather, this Court, as did the Supreme Court in *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392, 2393–2399, 49 L.Ed.2d 342 (1975), with regard to disclosure of exculpatory evidence in the prosecution's files, emphasizes that a disclosure request ought to be sufficiently specific as to give the prosecutor notice of exactly what the defense seeks.

In the instant case, petitioner's production request does not fail for specificity. Petitioner did specifically ask the government for disclosure of its investigators' § 2518(6) interim progress reports. Nor, without a closer look, does it fail on its face for lack of a factual basis. For the time being, the Court chooses to lend credence to petitioner's claim that he simply did not have access to any additional information on which he could have based his belief that either the initial authorizations or the subsequent extensions may have been unlawfully granted.

## II.

To make a final determination as to whether petitioner ought to be allowed access to the interim reports it seeks, the Court shall take the liberty of conducting an *in camera* inspection of said reports. The government maintains that disclosure of the interim reports petitioner seeks would seriously impede its ongoing investigation of drug trafficking in the Cleveland area, endanger certain government informers and neutralize their effectiveness in the field. An *in camera* inspection will best address the government's concerns.

In a number of recent cases, courts have touted *in camera* inspection as a means of protecting an accused's Fourth Amendment rights while advancing the public interest

---

**6.** Indeed, some jurists have suggested that more open disclosure of the documents in the hands of government prosecutors would speed up the disposition of criminal matters to everyone's benefit:

> And might not expended discovery benefit the prosecution as well as the accused? If sharpening of the issues, exposure of untenable arguments and more efficient marshalling of the evidence result from discovery, doesn't the prosecution profit?

Brennan, "The Criminal Prosecution: Sporting Event or Quest for Truth?" 1963 Wash.U.L.Q. 279, 287–88.

in confidential, comprehensive, efficacious criminal investigations. The court in *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir.1978), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1978), summarized the virtues of the use of *in camera* inspection where a court is faced with discovery questions:

> Requiring materials sought for discovery to be submitted to the court for an *in camera* inspection is a practice which is both reasonable and protective of the defendant's rights .... Moreover, in areas where, as in the present case, the request involves materials the disclosure of which is arguably not in the public interest, this Court has sanctioned the use of *in camera* inspections to resolve the conflicting demands of the defendant and the government.

The *Buckley* court's decision was consistent with the earlier observations of the Fifth Circuit in *United States v. Brown*, 539 F.2d 467 (5th Cir.1976), that an *in camera* inspection of documents sought by an accused as part of discovery adequately serves government security interests, as well as the accused's need for liberal access to information in the government's possession that is material to his defense. According to the court in *Brown:*

> The government's security of its files can be protected through an *in camera* examination of those documents the appellant asserts support his claim ....

    &#10070;    &#42;    &#10070;    &#42;    &#10070;    &#42;

This Circuit, ..., has repeatedly approved the use of *in camera* examinations as the means for resolving the conflict between a defendant's need for evidence and the government's claim of privilege based on the needs of public security. (Citations omitted.)

539 F.2d at 470. *See also United States v. Singer*, 660 F.2d 1295 (8th Cir.1981), *cert. denied* 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982); *United States v. Killian*, 639 F.2d 206 (5th Cir.1981), *cert. denied, Brunk v. United States*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981);

*United States v. Johnson*, 577 F.2d 1304 (5th Cir.1978).

### III.

This Court is inclined to follow the trend in several circuits as it is articulated in the aforementioned opinions. The U.S. Attorney is hereby ordered to submit to this Court for *in camera* inspection the two interim status reports which the petitioner seeks in discovery. After inspecting said reports, the Court will determine whether petitioner ought to be allowed access to them.

IT IS SO ORDERED.

### AMENDING ORDER

The instant Order is intended to amend this Court's January 27, 1984 Order in the above-captioned matter.

The U.S. Attorney is hereby ordered to submit to this Court for *in camera* inspection the interim progress reports in its possession which the petitioner seeks in discovery. There are eight (8) such reports. The reports are dated March 2, 10, 16, 26 and April 2, 8, 16, 27, 1982.

IT IS SO ORDERED.