72

UNITED STATES of America,

v.

Robert CHIMERA, Defendant.

No. 00–CR–46A(F).

United States District Court,
W.D. New York.

May 3, 2001.

Denise E. O'Donnell, United States Attorney, Buffalo, NY, Anthony M. Bruce, Assistant United States Attorney, of counsel, for the Government.

Thomas J. Eoannou, Buffalo, NY, for Defendant Catanzaro.

Morris, Cantor, Barnes, Goodman & Furlong, Buffalo, NY, Richard J. Barnes, of counsel, for Defendant Panepinto.

John Patrick Pieri, Buffalo, NY, for Defendant Frank Mambrino.

Joel Daniels, Buffalo, NY, for Carmen Mambrino.

Harrington and Mahoney, Buffalo, NY, James P. Harrington, of counsel, for Defendant Joseph DiGioia.

Hill & McCready, Buffalo, NY, Sean Dennis Hill, of counsel, for Defendant Annuncio Cannizzaro.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, Joseph M. LaTona, of counsel, for Defendant Chimera.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1). Defendant Chimera filed a motion pursuant to 18 U.S.C. § 2518 seeking discovery of progress reports, minimization instructions and various other materiels prepared in connection with Title III wiretap applications. On January 25, 2001, Magistrate Judge Foschio filed a Decision and Order in which he: (1) denied defendant's request for progress reports and his request for an *in camera* inspection of the reports by the Court; (2) denied defendant's request for minimization instructions; and (3) denied defendant's request for various other materials prepared in connection with the Title III applications.

Defendant filed objections to the Magistrate Judge's Decision and Order, and the government filed a response thereto. Oral argument was held on March 30, 2001.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the district court "may reconsider any pretrial matter under this subparagraph (A), where it has been shown that the magistrate's order is clearly erroneous or contrary to law." *Id.* Upon careful review of Magistrate Judge Foschio's Decision and Order and arguments of counsel relating thereto, the Court finds that Magistrate Judge Foschio's orders are neither clearly erroneous nor contrary to law.

Accordingly, defendant's objections to Magistrate Judge Foschio's Decision and Order are denied. The parties shall appear before the Court on May 4, 2001 for a meeting to set a trial date.

IT IS SO ORDERED.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

By order dated January 22, 2001 (Doc. # 31), Hon. Richard J. Arcara referred this matter to the undersigned for all pretrial matters. The matter is presently before the court on motion of Defendant Chimera, filed October 18, 2000 (Doc. # 21), and Defendant Catanzaro's motion, filed December 20, 2000 (Doc. # 30) for discovery relating to court orders issued pursuant to 18 U.S.C. § 2518(1).

## BACKGROUND

Defendants are charged in single count indictment alleging conspiracy to own and operate an illegal gambling business in violation of 18 U.S.C. §§ 371, 1955. By order filed September 21, 2000, Defendants were to file any motions limited to discovery they believed necessary to permit them to file motions to suppress evidence gained as a result of several electronic intercept orders issued during the investigation. As noted, Defendant Chimera's motion ("the Chimera motion") was filed in accordance with the scheduling order. By letters filed October 24, 2000 (Doc. # 22), October 25, 2000 (Doc. # 23), (Doc. # 24), and October 31, 2000 (Doc. # 25), (Doc. # 26), Defendants DiGioia, Frank Mambrino, Carmen Mambrino, Canizzaro, and Panepinto, respectively, joined in the Chimera motion. The Government filed its Response on November 3, 2000 (Doc. # 27). Defendants' Reply was filed on November 16, 2000 (Doc. # 29). On December 20, 2000, Defendant Catanzaro filed a motion seeking, *inter alia,* similar relief (Doc. # 30). Oral argument was conducted December 21, 2000. Based on the following, Defendants' motion should be DENIED.

## FACTS

Between March 9, 1999 and September, 1999, four wiretap and visual surveillance orders were issued and executed as to the premises at 188 Grant Street in Buffalo, New York, where the alleged gambling operation took place. One eavesdropping order as to an auto owned by Defendant Catanzaro and a local restaurant was also issued. As a result of informal discovery, Defendants have received from the Government copies of all of the electronic surveillance orders and extensions, search warrants, along with the underlying applications and sealing orders issued by the court in connection with the investigation.

The Government provided copies of the applications and search warrants for the Grant Street premises and named individuals. Additionally, Defendants have received a copy of a "sneak and peek" warrant issued for the Grant Street premises on February 23, 1999. Defendants also have received a copy of the Government's Verified Complaint, filed December 1, 1999, seeking forfeiture of the Grant Street premises providing further details of the results of the investigation. Further, the Government has provided all the electronic surveillance logs maintained by the investigators who monitored the court ordered intercepts, reflecting written notations of pertinent conversations and conduct. Affidavit of Joseph .M. LaTona, Esq., dated October 18, 2000, in Support of the Chimera Motion ("LaTona Aff."), ¶ 5. Further, the Government has provided Defendants with some of the actual tape recorded conversations and visual observations obtained under the court orders, and has agreed to provide Defendants with access to all the tape recorded fruits of the intercept orders. *Id.*

However, the Government has declined to produce a draft of the initial intercept order affidavit prepared in connection with the March 9, 1999 applications and order. Letter to Joseph M. LaTona, Esq. from Anthony M. Bruce, Assistant United States Attorney, dated December 15, 2000. The Government has also declined to provide copies of the progress reports submitted to the issuing judges, any minimization instructions given to the monitoring agents, reports of surveil-

lance activities, and "specimen pleadings" or drafts of the applications for the intercept orders issued during the investigation, however, the Government informed Defendants that such applications were prepared with guidance contained in a Department of Justice Electronic Surveillance Forms and Procedures Manual, which the Government also declined to provide. Letter to Joseph M. LaTona, Esq., dated October 5, 2000, from Anthony M. Bruce, Assistant United States Attorney.

Defendants now seek to obtain any reports directed to be filed by the issuing judges pursuant to 18 U.S.C. § 2518(6) ("progress reports"), instructions given to agents to guide them in complying with the minimization requirements of § 2518(5) ("minimization instructions"), reports regarding investigative activities on the part of government cooperating witnesses ("informant activity reports"), copies of any specimen pleadings ("boilerplate allegations"), LaTona Aff., ¶ 32, which were used by the agents to prepare and submit the applications to the court for the respective intercept orders pursuant to § 2518(1), and materials, *e.g.*, reports concerning the conduct of surveillance of Defendants' activities by government investigators ("physical surveillance materials") ("the requested information").

## DISCUSSION

Defendants argue that the requested information will enable them to determine whether the requirements for issuance of the intercept orders, particularly as provided in § 2518(1)(c) (showing that other standard investigative techniques had been tried and that such techniques if utilized would be unsuccessful or dangerous) had been met and, in the case of extensions of such orders, whether the requirements for such extensions as provided in § 2518(1)(c) were satisfied. Defendants also assert such information is necessary to aid in establishing that the issuing court was misled as to the progress of the investigation and thus prevented from refusing to authorize an extension of the initial intercept order, and that the agents responsible for executing the orders failed to earlier terminate the intercepts

upon accomplishment of the objects of the interception orders as required by § 2518(4)(e), (5). LaTona Aff., ¶ ¶ 8, 9.

■ The Government contends that the requests are beyond the court's authority to grant discovery pursuant to Fed.R.Crim.P. 16, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or under § 2518(8)(d) (permitting disclosure of intercepted communications, applications, and orders [for intercept authority pursuant to § 2518(1) ] ). At the outset, the Government contends that *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) held that any request for discovery pursuant to Rule 16(a)(1)(C) (permitting inspection of, *inter alia*, documents and tangible objects in the government's possession "material" to the defense or to be used at trial by the government as "evidence in chief at trial") ("Rule 16") is beyond the purview of Rule 16 unless the defense to which the request relates is directed to the government's case in chief. Gov't Response at 2–3. In *Armstrong*, as defendants sought information upon which to present a selective prosecution challenge to the underlying narcotics trafficking indictment, the Supreme Court held that such a "defense" was not directed to the government's case in chief and thus was beyond the authority granted by Rule 16. *Armstrong, supra*, at 463, 116 S.Ct. 1480. Rather, the Court held that discovery requests seeking factual information for the purpose of obtaining dismissal of the indictment based on an alleged violation of the Equal Protection Clause must be based upon an independent showing of a colorable basis for such claim. *Armstrong* at 470, 116 S.Ct. 1480.

Here, Defendants do not seek to establish a defense that is outside the Government's case in chief against them. Nor do Defendants request a dismissal of the Indictment based on a defect in the pleading or any alleged constitutional violation. Rather, as noted, they seek suppression of evidence based on violations of § 2518.

An attack upon the admissibility of evidence derived from a court authorized wiretap or eavesdropping device is directed to the core of the government's case. Indeed, at

oral argument, the Government stated it did not intend to call as witnesses at trial the cooperating witnesses, who allegedly observed gambling activity at the Grant Street premises and upon whose averments the search warrants and intercept orders were substantially based, thus effectively conceding that unless fruits of the intercept orders were admitted as evidence, the Government would have no case to present against Defendants at trial. Further, Title III applications and orders, like search warrant applications and warrants, are considered documents material to the defense under Rule 16(a)(1)(C). *United States v. Feola*, 651 F.Supp. 1068, 1089 (S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir.1989) (Table), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989) (defendant provided with discovery of affidavits submitted in support of wiretap application to permit him to challenge validity of wiretap order). Therefore, there is no basis to find that a request for documents which relate to a possible challenge to the admissibility of evidence derived from orders issued pursuant to § 2518(1) is anything but one for the purpose of "preparation of the defendant's defense," Fed.R.Crim.P. 16(a)(1)(C), to the Government's case in chief, and thus within the ambit of Rule 16(a)(1)(C), if Rule 16's materiality requirement is met. *See Armstrong, supra*, 116 S.Ct. at 1491 (concurring opinion of Breyer, J.). As such, there is no merit in the Government's contention that *Armstrong* bars Defendants' requests.

## A. *The Request for Progress Reports.*

Pursuant to 18 U.S.C. § 2518(6), a judge who issues an intercept order in accordance with § 2518(1) may direct that reports "showing what progress has been made toward achievement of the authorized objective [of the order] and the need for continued interception" be provided. Such reports are to be filed with the judge "at such intervals as the judge may require." *Id.* The purpose of reports directed pursuant to § 2518(6) is "so that any possible abuses might be quickly detected and halted" by the court thereby furthering Congress' objective in enacting Title III of limiting the extent of court authorized intrusions on the privacy of oral communications. *United States v.*

*Kahn*, 415 U.S. 143, 154–55, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974).

Defendants contend that disclosure of such reports in this case is required to enable them to demonstrate that the issuing judges may have been "misled" as to the progress of the investigation and that, as a result, the judges were prevented from terminating the orders earlier than as provided by the orders' respective termination dates. LaTona Aff., ¶ 8. Defendants also claim that the requested information will permit the court to more accurately determine, assuming a motion to suppress is filed by Defendants, that the issuing judges should not have granted any further orders and any extensions thereof after the March 9, 1999 order, thus implying that the reports will reveal that the applications for such orders may contain information contradicting the information presented to the judges in the applications for such later orders and extensions. *Id.* Defendants further assert that the reports may reveal that the agents who executed the orders failed to voluntarily terminate the interceptions upon achieving the objectives of the orders earlier than the stated termination date in the order, thus violating the requirement of § 2518(5). *Id.*, ¶ 9.

As noted, Fed.R.Crim.P. 16(a)(1)(C) authorizes discovery from the government of documents material to the defense. Excluded from discovery are internal investigative documents "made by the attorney for the government or any other government agent investigating or prosecuting the case." Fed. R.Crim.P. 16(a)(2). Discovery is material if the information sought is relevant to the case and will lead to the discovery of admissible evidence. *See United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir.1993); *United States v. Tanner*, 279 F.Supp. 457, 469–70 (N.D.Ill. 1967). Further, the requested information must have more than an abstract relationship to the issue presented; there must be some indication that the requested discovery will have a significant effect on the defense. *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir.1991); *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir.1975); *United States v. Feola, supra*, at 1144.

Although Defendants agree the requested progress reports will assist them in establishing violations of § 2518(1), (4)(e), and (5), the court finds the information contained in such reports will not materially aid Defendants' quest to discover potential defects in the initial applications for the Title III orders, of the execution or extensions of the orders. Any lack of probable cause for the issuance of the orders or a failure to otherwise comply with § 2518(1)(c) must be present itself on the face of the application. *See United States v. Wagner*, 989 F.2d 69, 74 (2d Cir.1993) (assessing existence of probable cause for wiretaps on basis of informant's investigative activities as described in affidavit of support of Title III application and not results of subsequent suppression hearing); *United States v. Orozco*, 108 F.R.D. 313, 316 (S.D.Cal.1985) (validity of wire tap applications must "be based on the knowledge of the government agents as of the date the application was sought"). As Defendants have received these documents, the progress reports will be irrelevant, and thus immaterial, to the court's consideration of these issues. Any questions regarding the investigators's failure to comply with early termination requirements applicable under § 2518(3)(e), may be determined by comparison between the objectives as stated in the order and the actual taped interceptions, transcript summaries, and contemporaneous logs, all of which the Government provided or has agreed to provide to Defendants. The same is true as to any claims of failure to minimize in accordance with § 2518(5). *Orozco, supra*, at 316 (denying request for Title III progress reports stating "tapes, summaries, and logs ... are the original and best sources of information regarding statutory compliance").

Nor is there any basis to believe that the reports will yield exculpatory material required to be disclosed pursuant to *Brady v. Maryland, supra*. First, *Brady* material is not a proper subject of pretrial discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Second, as the court in *Orozco, supra*, observed, progress reports primarily constitute summaries of interceptions and therefore "do not provide any statements or exculpatory material

not also required to be disclosed in its original form." *Orozco, supra*, at 316. Thus, if the intercepted communications contain exculpatory information, Defendants either already have, or will have, access to it in sufficient time to use it in their defense. The logs will assist in locating such material. Further, on this record, there is no basis to find any reasonable likelihood the attorney for the Government or the agents who prepared and filed the progress reports included information tending to exculpate Defendants. Defendants have not offered any such reason, and, given the information as reflected in the sneak and peek warrant application and the Government's forfeiture complaint reflecting detailed observations of suspected illegal gambling at the subject premises, the court declines to speculate that such exculpatory information could conceivably exist.

Additionally, Defendants fail to show there is any reason to suppose that the reports would provide information tending to show the investigators misled the court regarding the progress of the investigation and the justification for extensions of any of the orders at issue. If the reports were inconsistent in any degree with the application for extension, the issuing judge was able to consider such fact in evaluating the need for the extension. Even assuming some misleading information was submitted in the application, it is the application, not the progress reports, that will provide Defendants with the best source of information upon which to make such an argument. *See Orozco, supra*, at 316 n. 3 (citing CARR, THE LAW OF ELECTRONIC SURVEILLANCE 425 1977) ("courts generally do not require discovery of summary reports and other secondary material unless verbatim recordings are unavailable.") As noted, Defendants have received or will receive copies of the original applications. Accordingly, there is no basis to find that the reports will yield information material to the defense in this case.

This result is also consistent with the disclosures of Title III documents as enacted by Congress in § 2518(7)(d) which authorizes the judge to provide to an aggrieved person who has filed a motion copies of portions of intercepted conversations, applications, and

orders. Significantly, progress reports, as provided for in § 2518(6) are not included. Given that such reports are for the benefit of the issuing judge in monitoring compliance with the order, *Kahn, supra,* it follows, by negative implication, that such reports were not intended by Congress to be disclosed. *See Orozco, supra,* at 315 (rejecting, *inter alia,* defendants' contention that progress reports are public records subject to disclosure). Moreover, as the reports are prepared by prosecutors or agents assigned to the investigation, they also fall within the law enforcement exception to discovery as provided in Fed.R.Crim. P. 16(a)(2).

Finally, courts have generally rejected similar requests for progress reports. *See, e.g., United States v. Wright,* 121 F.Supp.2d 1344, 1349–50, (D.Kan.2000); *United States v. Birdman,* 1992 WL 203318 (E.D.Pa.); *Orozco, supra; United States v. Brodson,* 390 F.Supp. 774, 777–78 (E.D.Wis.1975).

■ Further, the court declines to follow the decision in *United States v. Willis,* 578 F.Supp. 361, 365 (N.D.Ohio 1984) relied on by Defendants directing an *in camera* review of Title III progress reports requested by the defense. In *Willis,* decided before the decision in *Orozco, supra,* the court declined to make any determination that the reports contained information material to the defense; rather, the court simply assumed that because the defendants did not have access to the requested information it was unreasonable to require that such a showing be made. *Willis, supra,* at 363–64. Such reasoning effectively removes the materiality element from Rule 16(a)(1)(C) regarding the request at issue, and will therefore not be followed. Defendants also invite the court, based on *Willis,* to conduct an *in camera* review of the reports to discover information which may assist Defendants in preparing their anticipated challenge to the interception orders in this case. Such procedure would, however, require the court review all of the progress reports as well as the Title applications, and probably voluminous transcripts of intercepted communications and logs in a search for possible significant inconsistencies. For the reasons discussed, there is no rea-

sonable probability of finding such material, and accordingly, the court declines to do so.

Therefore, Defendants' request for progress reports or for an *in camera* inspection should be denied.

### B. *Request for Minimization Instructions.*

■ Defendants request they be given copies of any instructions provided to agents assigned to operate and monitor the wiretaps and eavesdrop devices. LaTona Aff., ¶¶ 10–12. The Government has not responded to this request in its written response, however, the Government did decline the request in its October 5, 2000 letter to Defendants.

Whether such information is material, and thus within the court's authority under Rule 16, depends on whether the information is relevant to the issue of compliance with the requirements of § 2518(5). As discussed, *supra,* with regard to Defendants' request for progress reports, whether the communications intercepted were so far beyond the scope authorized by the terms of the issuing judges order must turn on a comparison of the actual communications intercepted and the terms of the order. *See Orozco, supra,* at 316. However, instructions by counsel as to how to maintain compliance with an intercept order have been held to be one factor the court may consider in deciding whether the investigators' alleged failure to minimize constituted a violation of the statute. *See United States v. Gotti,* 42 F.Supp.2d 252, 268–69 (S.D.N.Y.1999) (briefing of agents on minimization requirements and posting at eavesdropping facilities may be considered as evidence of good faith efforts to comply with § 2518(5)). The issue is whether in the particular circumstances of the investigation the statute's requirement that the interception not extend to an unreasonable degree to conversations outside the order's scope of authorization was met or not, including whether minimization instructions were given to the responsible agents. *Scott v. United States,* 436 U.S. 128, 137, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); *Gotti, supra,* at 268, citing cases. The specific text of any instructions will therefore be irrelevant to the court's determination on the issue of compliance with § 2518(5), unless the Government

chooses to submit them in response to a motion to suppress on this ground, *Gotti, supra,* in which event they will be available to Defendants, or in the event the court should, after a review of any papers, filed in connection with a motion to suppress on this ground, determine that an evidentiary hearing on the issue is required. *See United States v. Orozco,* 630 F.Supp. 1418, 1538–39 (S.D.Cal.1986). Accordingly, the request should be denied.

### C.  *Request for Surveillance Records.*

■ Defendants seek to obtain access to the Government's records detailing the extent of activities of cooperating witnesses, *i.e.,* informants, whose activities provide much of the basis for issuance of the search warrants and intercept orders in the investigation. LaTona Aff., at 3–7. Defendants argue that such information will assist the defense in demonstrating that the Government did not comply with the requirements of § 2518(1)(c) (futility or danger of alternative means of investigation). This request fails for several reasons. First, such records fall squarely within the law enforcement exception to Rule 16. See Fed.R.Crim.P. 16(a)(2). Second, as, discussed in connection with Defendants' requests for progress reports and minimization instructions, the ultimate question of whether the applications for the intercept order were sufficient as to this requirement must be decided by the court on the face of the applications. Section 2518(1)(c) does not allow the court to consider information not appearing in the application. *See United States v. Wagner, supra,* at 74; *Orozco, supra,* at 316. As such reports could not be used to rehabilitate a deficient application, after the fact of execution of a challenged intercept order, they are equally irrelevant to the court's evaluation of the issue on a motion to suppress. The request should therefore be denied.

### D.  *Specimen Eavesdropping Pleadings.*

■ Defendants request copies of materials and draft applications used by the Government in preparing its applications to the court for the wiretap and eavesdropping orders obtained during the course of the instant investigation. LaTona Aff., at 7. The Government opposes the request on several grounds including that the draft applications are, with one exception, unavailable, the drafts are exempt from discovery under Rule 16(a)(2), and disclosure could compromise other confidential investigations from which the draft documents may have derived. Government's Response at 8–9.

Section 2518(1)(c) requires that an application for a wiretap or eavesdropping order state whether other investigative techniques have been attempted or why they reasonably appear unlikely to succeed or would be dangerous. An applicant for an order need only "inform the authorizing judicial officer of the nature and progress of the investigation and the difficulties inherent in the use of normal law enforcement methods." *United States v. Miller,* 116 F.3d 641, 663 (2d Cir.1997), *cert. denied,* 524 U.S. 905, 118 S.Ct. 2063. Whether the application meets this requirement is to be determined in a "practical and common sense fashion." *United States v. Torres,* 901 F.2d 205, 231–32 (2d Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). However, applications which make only "generalized and conclusory statements that other investigatory procedures would prove unsuccessful," are inadequate and may require suppression. *United States v. Lilla,* 699 F.2d 99, 104 (2d Cir.1983).

Many investigations involve criminal activity having common features. Problems of gaining access to leaders of criminal conspiracies and the identity of all co-conspirators as well as probative evidence of their criminal activities are inherent in a variety of cases. Title III applications directed to such cases by law enforcement agencies may therefore appear to have repetitive characteristics, if not common language. It is even possible that many of the facts asserted in a current application could be similar, if not identical in general terms, to those averred to in an earlier application involving a similar investigation. Thus, the question on a motion to suppress based on an alleged violation of the § 2518(1)(c) is not whether the challenged statements appear similar in form to those which may have been submitted in connection with a prior application, but

whether the information submitted to the issuing judge on the application at hand meets the requirements of § 2518(1)(c) based the specific information presented concerning the present investigation. *Cf. United States v. Lilla, supra,* at 104 (affidavit's assertion of facts of investigation as stated justified wiretaps held "contrary to common sense").

Evidence of prior applications used by investigators in preparing applications for the intercept orders at issue, or "boilerplate" and "go byes [sic]" as described by Defendants, LaTona Aff. at 7, are not relevant to Defendants' expected challenge to the applications on this ground. "Boilerplate" and forms are the daily fare of countless legal transactions, including criminal proceedings. However, excessive use of such "boilerplate" or forms can operate in favor of the defense as reliance on such terms to establish investigative necessity creates the risk that they will be rejected as too generalized or implausible. *See, e.g., Lilla, supra,* (statement rejected as "good example of how not to conform to statutory requirements"). Thus, the use of forms or other documents to prepare a Title III application will not necessarily establish that the application under review fails to meet the requirements of § 2518(1)(c).

Courts in this circuit have reached similar results. *United States v. Estrada,* 1995 WL 577757 *6 (S.D.N.Y.) (fact that wiretap application contained vague, boilerplate statements which tracked language of § 2518(1)(c) did not render wiretap invalid as even if inclusion of such statements was incorrect, application still provided ample basis upon which reviewing judge could find statutory requirement was satisfied), *aff'd sub nom., United States v. Zapata,* 135 F.3d 844 (2d Cir.1998)(TABLE); *United States v. Restrepo,* 1989 WL 4292, *4 (D.Conn.) ("the inclusion in an affidavit of general or boilerplate statements does not of itself render the affidavit inadequate [under § 2528(1)(c) ] . . . . What matters is that the affidavit indicate why such procedures have not been or are not likely to be adequate in the particular case.") (citing cases), *aff'd,* 884 F.2d 1381 (2d Cir.1989), *cert. denied,* 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 772 (1990).

Defendants' reliance on *United States v. Castillo—Garcia,* 117 F.3d 1179 (10th Cir. 1997) and *United States v. Carneiro,* 861 F.2d 1171 (9th Cir.1988) is misplaced. Neither case "condemns" the use of "boilerplate" in connection with Title III applications as Defendants assert, LaTona Aff., 32, nor does either case imply discovery of prior applications should be granted. In *Castillo–Garcia,* the court upheld suppression of two wiretaps not because the underlying applications had relied on "boilerplate," but because the application, which was based upon two prior applications that the court found complied with § 2518(1)(c), failed to state any specific justification for two additional telephones for which permission to wiretap was then being sought. *Castillo–Garcia, supra,* at 1194, 1196. In *Carneiro, supra,* the court affirmed suppression of wiretap evidence because of the presence of material omissions and misstatements in the underlying applications based on the government's concession that a material statement by the applicant regarding necessity for the wiretap order was untrue. *Carneiro,* at 1182. Although testimony at a hearing revealed the same misstatements were included in two prior applications, the testimony also showed that no independent investigation supported the statements. *Id.* Thus, suppression was granted not because the statements appeared in prior Title III applications but because they lacked any reliable factual basis. *Id.*

Nor is there any support for Defendants' requests in *United States v. Salemme,* 978 F.Supp. 343 (D.Mass.1997). LaTona Aff., ¶¶ 18–19. Salemme presents an unusual case where the court received evidence of what it considered to be material omissions and misleading information which had been used to justify the necessity of wiretaps previously issued by the court. *Salemme, supra,* at 346. In response, the court directed disclosure of all information in the hands of the government tending to demonstrate the statements at issue were false and misleading. *Id.* at 355. *Salemme* does not support a routine pretrial discovery request for any materials used in the preparation of Title III applications as sought by Defendants in the instant case. Regardless of whether the

court in that case was correct, in reaction to the discovery that some inaccurate information had been submitted to it, in ordering the broad discovery it did (preparatory to a *Franks v. Delaware* hearing which it also ordered) no similar threshold showing has been made in this case.

## CONCLUSION

Based on the foregoing, Defendants' motions are DENIED.

*The parties shall appear before the undersigned on* **February 13, 2001 at 9:30 a.m.** *to schedule further proceedings in this matter. Time is excluded based on Defendants' stated intention to file further motions.*

SO ORDERED.

Dated: January 25, 2001
      Buffalo, New York