**UNITED STATES of America, Plaintiff,**

v.

**Jose Omar OROZCO, et al., Defendants.**

**No. 85–0252–JLI–Crim.**

United States District Court, S.D. California.

Sept. 19, 1985.

18. *Id.* at 6.

314

Robert Moore, Miami, Fla., for Jose Antonio Ledgard, Madonna Ledgard, Gonzalo Ledgard.

Victor Sherman, Santa Monica, Cal., for Augustin Fernando Maurtua, Jorge Maurtua.

Athena Shudde, San Diego, Cal., for Alexis Sarda-Lusich.

James Warner, San Diego, Cal., specially appearing for Michael Van Horn.

Eugene Iredale, San Diego, Cal., for Michael Diebert, Dudley Richard Whitney.

Michael Pancer, San Diego, Cal., for Thomas Pool, Mary Pool.

George Hunt, San Diego, Cal., for Fred Samango.

Carl Klein, San Diego, Cal., for Steve Krogstad.

Mark Adams, San Diego, Cal., for John Slater (specially appearing for Mitch Couasnon).

Stephen Perrello, Jr., San Diego, Cal., specially appearing for James Edward Scott.

Nelson Brav, San Diego, Cal., for Wilton "Lucky" Collier.

Robert Grimes, San Diego, Cal., for Antonino "Nino" Virgilio (specially appearing for Robert Louis Shine).

· Douglas Brown, San Diego, Cal., for John Wesley Rowles.

Sheldon Sherman, San Diego, Cal., for Randolph C. Barsotti, Bradley Logan.

Mario Conte, Federal Defender, San Diego, Cal., for John Michael Brunner.

Joseph Milchen, San Diego, Cal., for Kenneth Nelson Clarke.

John Wood, San Diego, Cal., for Gabriel James Sencial.

Frank Ragen, San Diego, Cal., for Frank Len Jackson.

Terry Roden, San Diego, Cal., for Kevin Robert Matouzzi.

Michael McCabe, San Diego, Cal., for John Stephenson Kerr.

Floralynn Einesman, San Diego, Cal., for David Merritt Churchill.

Inge Brauer, San Diego, Cal., for Sandra Zeck.

Thomas Penfield, San Diego, Cal., for Michael E. Dodson.

Peter Giordano, San Diego, Cal., for Henry Jones-Balcazar.

Patrick Hall, San Diego, Cal., for Kathy Lynn Davis, Tina Marie Sullivan (specially appearing for Richard Barbour, Patrick Michael Houser).

Richard Williamson, San Diego, Cal., for Timothy Ditty (specially appearing for Dennis Elias).

James Pokorny, San Diego, Cal., for Raul Cabada.

Juanita Brooks, San Diego, Cal., for Javier Laos.

Frank Vecchione, San Diego, Cal., for Charles Edmundo Jones-Balcazar.

Richard Barnett, San Diego, Cal., for Donald Takayama (specially appearing for Steve Vico).

Milton Silverman, San Diego, Cal., for David Eugene Cothran.

Chuck McCutcheon, San Diego, Cal., for Wallace G. Bartlett.

Lynn Ball, San Diego, Cal., for Miguel Quiroz.

Peter Hughes, San Diego, Cal., for Bob Watson, Gregg Canada.

Robert Boyce, San Diego, Cal., for Richard Lyman Newman.

## MEMORANDUM DECISION AND ORDER

IRVING, District Judge.

Numerous discovery motions came on for hearing August 20, 1985 before the Honorable J. Lawrence Irving. Appearances of counsel are listed in the official court minutes. The court ruled orally on the majority of the motions, but took under submission the following:

1) Motion for discovery of progress reports;

2) Motion for bill of particulars (in part);

3) Motion for discovery of Federal Bureau of Investigation "302" reports of debriefings of co-defendants.

Having considered the pleadings, oral argument of counsel and material submitted *in camera*, the court issues the following memorandum decision.

I. *Motion for Disclosure of Progress Reports*

The primary evidence in this case is derived from electronic surveillance of forty-seven telephone lines pursuant to eleven court orders authorizing the interceptions. Pursuant to the orders authorizing the interceptions, the government submitted five-day progress reports to the supervising district judge.

Defendants seek discovery of the progress reports and offer five arguments as to why they should be provided. First, defendants argue that they must be provided access to the reports so that they can determine whether the government adequately complied with statutory requirements of 18 U.S.C. § 2510, *et seq.* Defendants suggest that the progress reports might reveal whether initial propriety existed for the issuance of orders to wiretap, whether the government became aware after the wiretaps were authorized that the objectives for instituting them had been met, and whether adequate minimization occurred. Second, defendants argue that the progress reports may contain material that should be turned over pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Jencks Act, 18 U.S.C. § 3500, and Fed.R.Crim.Pro. 16. Third, defendants suggest that the progress reports may contain information indicating a violation of principles embodied in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Fourth, defendants argue that the progress reports should be considered public documents, invalidating any reason for such documents to remain secret. Finally, defendants argue that the reports will provide them with the government's interpretation of alleged coded drug-language contained on the tapes.

■ Progress reports aid the district judge issuing an order for electronic surveillance, to determine "what progress has been made toward achievement of the au-

thorized objective (of the wiretap) and the need for continued interception." 18 U.S.C. 2518(6). The authorizing statute does not require that such reports be filed, and the judge issuing an order for interception has complete discretion in determining at what intervals he or she wishes the reports submitted. 18 U.S.C. 2518(6); *In re DeMonte*, 674 F.2d 1169, 1174 (7th Cir. 1982). Progress reports that are submitted, however, must be found by the supervising judge to be sufficient and in compliance with the order permitting telephone surveillance. *Id.; United States v. Iannelli*, 430 F.Supp. 151, 156 (W.D.Pa. 1977); *see also United States v. Brodson*, 390 F.Supp. 774, 777–78 (E.D.Wis.1975) (progress reports are solely for consideration of authorizing judge).

As demonstrated in the progress reports submitted by defendants as exhibits to their moving papers, the major purpose of progress reports is to summarize for the supervising judge the monitored conversations intercepted thus far on the wiretaps.[1] The summary usually lists the number of calls intercepted and the general content of the calls. It is not unusual for progress reports to contain a reference to minimization conducted by the agents monitoring the calls and a statement regarding the continued need for interception. The court, however, does not impose a standard procedure or format for the reports and they consequentially may vary in content and length.

The applicable statutes do not discuss disclosure of progress reports. *United States v. Marchman*, 399 F.Supp. 585, 586 (E.D.Tenn.1975). By contrast, §§ 2518(8) and (9) specifically provide for and outline the procedure for disclosure of applications and orders.

The arguments presented by defendants in support of disclosure are not persuasive. First, disclosure of progress reports is not necessary in order to determine whether the government complied with the statutory requirements of 18 U.S.C. § 2510, *et seq.* Progress reports are, for the most part, a summary of information already provided to defendants, i.e. the tapes, summaries and logs. Those items already provided to defendants[2] are the original and best sources of information regarding statutory compliance.[3] The applications for orders authorizing interception are the best sources of information to bolster an argument that the government lacked initial cause to seek such orders. The court does not see how progress reports issued after wiretaps have been initiated could reveal improprieties in original applications which must ultimately be reviewed in a motion to suppress based on the knowledge of the government agents as of the date the application was sought. Similarly, it is unlikely that progress reports would uncover material falsity contained in the initial application which would not be evidenced by the application itself or by agents' testimony.

Addressing defendants' claims that progress reports might contain *Brady*, *Jencks* or Rule 16 material, it must be remembered that such reports are, for the most part, summaries of interceptions and do not provide any statements or exculpatory information not also required to be disclosed in its original form. Defendants suggest that the progress reports are "statements" of the prosecutor monitoring the investigation, and that they are therefore *Jencks* material which will be required to be disclosed after the prosecutor's testi-

---

**1.** The court has not reviewed the progress reports at issue in this case.

**2.** The court relies on the representation of the government made at the motion hearing that defendants have already been provided with copies of the tapes, summaries and logs.

**3.** *See United States v. Marchman*, 399 F.Supp. 585, 586 (E.D.Tenn.1975) (disclosure of progress reports not required where defendant given access to all applications and orders)

It has been observed by one commentator that courts generally do not require discovery of summary reports and other secondary material unless verbatim recordings are unavailable. *See* James G. Carr, The Law of Electronic Surveillance 425 (1977).

mony at motions hearings. However, it has not been established to the court's satisfaction that the prosecutor need be called to testify or that she will be called. Also, it is not clearly established that a progress report prepared by the prosecutor would be a "statement" for purposes of the Jencks Act. *See* 18 U.S.C. § 3500(e). Because it is uncertain at this juncture whether the prosecutor will testify, the court does not decide today the issue of whether the Jencks Act compels disclosure of the progress reports.

Defendants also suggest that the progress reports will provide a glossary of the government's interpretation of codes allegedly employed by those conversing in the intercepted phone calls to camouflage detection of drug-related discussions. Defendants have previously disclosed to the court their intention to vigorously oppose suggestions by the government that certain innocuous words have drug-related meaning. However, the court has already ordered that any information regarding experts' interpretation of alleged drug-terminology be provided to defendants. The court is certain that by way of discovery and motions *in limine,* the defendants will be fully apprised of the government's interpretation of coded language.

Thus, the court finds no compelling reason at this time for the disclosure of the progress reports. Accordingly, the motion is denied.

## II.  *Motion for Bills of Particulars*

Count One of the two hundred seventy-count indictment in this case charges all ninety-eight defendants with conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Two Hundred Sixty charges defendants Sullivan and Wooten with conspiracy to participate in the use of extortionate means to collect and to attempt to collect extensions of credit in violation of 18 U.S.C. §§ 371 and 894. Count Two Hundred Sixty-One charges defendants Orozco, Augustin Fernando Maurtua, Jose Antonio Ledgard and Cabada with conspiracy to participate in the use of extortionate means to collect and attempt to collect extensions of credit in violation of 18 U.S.C. §§ 371 and 894.

Count Two Hundred Sixty-Seven charges Frank Len Jackson with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. Defendants Michael Jay Sullivan, Augustin Fernando Maurtua and Jose Antonio Ledgard are also charged with engaging in continuing criminal enterprises in Counts Two Hundred Sixty-Eight, Two Hundred Sixty-Nine and Two Hundred Seventy, respectively.

Defendants submitted a request for bills of particulars with more than a hundred queries. The court denied the majority of those requests but took under submission questions concerning dates on which each of the conspiracies was formed, dates on which each defendant joined the various conspiracies and the manner in which the conduct of each defendant is alleged to have been in furtherance of the conspiracy. The court also took under submission the issue of particulars regarding the continuing criminal enterprise (hereinafter "c.c.e.") charges including: 1) specification of the manner in which the conduct of the defendants charged with c.c.e. is alleged to have been a part of continuing series of violations; 2) the date on which each charged c.c.e. was formed; 3) the names, addresses, telephone numbers, and other means of locating the five or more persons as to whom each defendant charged with c.c.e. occupied a position of organizer, supervisor or manager; 4) the manner in which each defendant charged with c.c.e. occupied a position of organizer, supervisor or manager; 5) particulars regarding "continuing series of violations" alleged committed by each defendant charged with c.c.e.; 6) particulars regarding the "substantial income and resources," and profits, obtained by the defendants charged with c.c.e. from a "continuing series of violations" and; 7) the method of accounting and factual basis for the allegation that the narcotics violations committed by defendants charged

with c.c.e. render various assets forfeitable.

▆ Fed.R.Crim.Pro. 7(f) gives the court discretion to direct the filing of bills of particulars. Bills of particulars serve three purposes: to apprise defendants of the charges presented to minimize the danger of surprise at trial, to aid in trial preparation, and to protect against double jeopardy. *United States v. Burt*, 765 F.2d 1364 (9th Cir.1985); *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir.1983); *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir.) *cert. denied* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). In determining whether bills of particulars should be ordered in the instant case, the court considers whether the indictment and discovery adequately advise defendants of the charges. *United States v. Long*, 706 F.2d at 1054.

▆ The court finds that the indictment and the voluminous discovery adequately advise defendants of the conspiracies in Counts One, Two Hundred Sixty and Two Hundred Sixty One, and the request for particulars regarding these counts is denied. Count One charges all the essential elements of conspiracy, states the specific code sections violated, and explicitly names the co-conspirators. *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir.) *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). The five hundred seventeen overt acts charged outline how each defendant allegedly contributed to the conspiracy, and the times and places of his or her participation. *United States v. Giese*, 597 F.2d at 1180; *United States v. Harrell*, 737 F.2d 971, 975 (11th Cir.1984) *cert. denied*, —— U.S. ——, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985). The discovery provided to date further supplements the information in the indictment. This discovery includes tape recordings, agents' reports and a copy of the Federal Bureau of Investigation's on-line computer system's (commonly referred to as "OCIS") printout which contains summaries of all phone calls made by each defendant. Similarly, Counts Two Hundred Sixty and Two Hundred Sixty-One

adequately advise defendants of the conspiracy charged. Each conspiracy count tracks the language of the conspiracy statute, charges the essential elements of conspiracy, identifies the co-conspirators, and describes in the overt acts each defendant's participation and the time and place of that participation.

▆ With respect to the c.c.e. charges, the court views the majority of those inquiries as sufficiently answered by a common sense, practical reading of the indictment. *United States v. Burt*, 765 F.2d at 1367. The indictment specifically sets forth as to all defendants each violation alleged to be a part of a "continuing series of violations" and the dates and locations of the violations. The dates of the "series of violations" narrow the possible dates upon which a c.c.e. could have formed. That information, coupled with the extensive discovery provided in this case, is sufficient to indicate an approximate date of formation of the c.c.e.'s alleged.

▆ The indictment also details the profits, property and contractual rights allegedly obtained through interests in the charged c.c.e.'s. The court finds that this enumeration of forfeitable assets provides adequate notice of the government's intention to forfeit, and provides a statement of the required c.c.e. element of obtaining substantial income or resources from a continuing series of violations. *United States v. Raimondo*, 721 F.2d 476, 477–78 (4th Cir. 1983) *cert. denied* —— U.S. ——, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984). The indictment adequately advises the defendants regarding forfeiture; the requested particulars regarding the government's method of accounting, etc. actually concern discovery and the theory of the government's case. Accordingly, the court denies that request.

Case law demonstrates that it is not unusual for the government to provide in the indictment, in court representations, or by way of bills of particulars, identification of the five or more supervisees over whom defendants charged with c.c.e violations are alleged to occupy a position of organizer,

supervisor or manager. *See, e.g., United States v. Burt,* 765 F.2d at 1367; *United States v. Sperling,* 506 F.2d 1323, 1344–45 (2d Cir.1974) *cert. denied* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975); *United States v. Howard,* 590 F.2d 564, 567 (4th Cir.1979); *cert. denied* 440 U.S. 976, 99 S.Ct. 1547, 59 L.Ed.2d 795 (1978); *United States v. Johnson,* 575 F.2d 1347, 1355–56 (5th Cir.) *cert. denied* 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1978). *But see United States v. Hawkins,* 661 F.2d 436, 451–52 (5th Cir.1981) *cert. denied* 456 U.S. 991, 102 S.Ct. 2274, 73 L.Ed.2d 1287 (1982).

■ The indictment in the instant case suggests a complex narcotics case involving narcotics distribution organizations within larger organizations. Considering the number of alleged co-conspirators and defendants, it is not easily discernible on the face of the indictment which persons, either named or unnamed, are alleged supervisees. Due to the grand scale of this case, which involves a large number of conspiratorial actors and criminal acts, there is a great potential for surprise at trial. The court orders the government to provide a bill of particulars identifying the alleged supervisees of each defendant charged with c.c.e. Identification of those individuals, combined with the voluminous discovery in the case, should suggest the manner in which the persons charged with c.c.e. occupied positions of organizer, supervisor or manager, eliminating the need for particulars specifying that information.

The court recognizes that the government may, prior to trial, wish to delete from or add to the list of supervisees. Fed. R.Crim.Pro. 7(f) provides for amendment of bills of particulars and accordingly, the court will entertain such a motion within a reasonable period of time prior to trial, if necessary.

### III. *Motion for Discovery of "302" Reports*

■ To date ten defendants in this case have pleaded guilty and have been "debriefed" by F.B.I. agents. Defendants seek discovery of the written reports (also known as "302 reports") of the debriefings. The government opposes the request and has submitted the reports *in camera* for the court's review.

The court has reviewed the twelve reports and feels that they do not contain any *Brady* material. The reports do contain some statements that would have to be provided as *Jencks* material should those defendants testify, but that issue is not before the court at this time. The request is denied.

### IV. *Order*

Accordingly, the motion for discovery of progress reports is denied. The motion for bills of particulars is denied in part, granted in part. The motion for discovery of "302" reports is denied.

IT IS SO ORDERED.