UNITED STATES of America,
Plaintiff–Appellee,

v.

Jackie Dee WILLIS,
Defendant–Appellant.

No. 88–2718.

United States Court of Appeals,
Tenth Circuit.

Nov. 30, 1989.

Jeffrey D. Doniger of Doniger & Vitek, Denver, Colo., for defendant-appellant.

Michael P. Carey, Asst. U.S. Atty. (Michael J. Norton, Acting U.S. Atty., and Kathryn Meyer, Asst. U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee.

Before SEYMOUR, HENLEY * and BALDOCK, Circuit Judges.

HENLEY, Senior Circuit Judge.

Jackie Dee Willis, defendant-appellant, appeals his conviction after a jury trial in the United States District Court for the District of Colorado [1] for one count of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846 and 18 U.S.C. § 2; and one count of unlawful use of a communications facility to facilitate distribution of cocaine, 21 U.S.C. § 843(b). Defendant was sentenced to two years imprisonment for the conspiracy count, and five years probation for the unlawful telephone use count. We affirm.

On appeal, defendant contends the trial court erred in (1) denying the defendant's motion to suppress a wiretap; (2) denying the defendant's motion for judgment of acquittal; (3) overruling the defendant's objection to the prosecution's introduction of rebuttal evidence; and (4) instructing the jury on the application of the law of complicity to the offense of conspiracy.

I. *Facts.*

Beginning June 9 and until July 23, 1987, a court-approved wiretap was in place on the telephone of Robert Moats, who resided at 1313 Williams Street, Condominium Unit 1502, in Denver, Colorado. Defendant, Jackie Dee Willis, lived in the same building in Unit 1204. Moats pleaded guilty to a drug related conspiracy charge prior to trial, and served as a government witness against Willis.

According to the testimony of Moats, he was a drug dealer who had known defendant for approximately five years. Moats stored his cocaine in defendant's apartment, and as a storage fee he paid defendant $200.00 per month. In addition Moats deducted $200.00 per month from an outstanding debt that defendant owed him. The cocaine stored in defendant's apartment was kept in a wooden box along with a weighing scale. Moats further testified that defendant had sold cocaine for him and that he "believed" defendant had been in defendant's apartment during at least one drug transaction in July, 1987.

Several intercepted telephone conversations were introduced into evidence by the government. Among these calls were:

(1) A June 10, 1987 telephone call between Moats and defendant in which Moats said he wanted to bring a "plant" down to defendant's apartment. Moats testified "plant" was a code word for the box in which he kept his cocaine.

(2) A telephone call, made a few days after the above call, between Moats and his accountant, Jeannie Brown, who advised Moats to keep his drugs at "Jack's"—(defendant).

(3) A June 29, 1987 telephone call between Moats and coconspirator Tom Mills in which they agreed to meet at defendant's apartment. Moats testified

---

* The Honorable J. Smith Henley, Senior United States Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

**1.** The Honorable Zita L. Weinshienk, United States District Judge for the District of Colorado.

that at this meeting he sold cocaine to Mills.

(4) A July 14, 1987 telephone call between Moats and defendant about which Moats testified that the phrase "watering cactuses," which was used, as well as a statement by the defendant that he would be out of town, meant his apartment would be available to Moats for his use.

In addition, a conversation between Moats and Mills on July 15, 1987 was overheard, taped, and introduced into evidence. In the conversation, the two discussed the fact that Moats kept his cocaine in defendant's apartment. An FBI agent also testified that he saw Moats and Mills later enter defendant's apartment.

Karen Koday, Moats's maid, testified that on one occasion she retrieved the box with the cocaine from defendant's apartment and that she had seen Moats take some cocaine from the box and give it to defendant.

On June 26, 1987 Clive Duke and Moats were observed by a Drug Enforcement Administration agent exiting the defendant's twelfth floor apartment. Duke testified he went with Moats to a twelfth floor unit to purchase cocaine in June of 1987.

On July 23, 1987 search warrants were executed at the apartments of defendant and Moats. From defendant's apartment agents seized a wooden box which contained more than 122 grams of cocaine. Cocaine was also found in Moats's apartment.

At trial, defendant acknowledged he used cocaine, and he knew Moats was a dealer, but said that he never agreed to let Moats store cocaine in his apartment. Defendant also testified as to his financial problems, including his difficulty in paying his rent, which was $625.00 per month. Defendant's landlady offered rebuttal testimony that defendant was chronically behind in his rent, but that in 1986 and 1987 he made four cash payments: $900.00 in November, 1986; plus $1,000.00 in February, $900.00 in May, and $650.00 in June, 1987.

## II. *Minimization.*

Appellant first argues that the prosecution failed to use adequate efforts to minimize nonpertinent telephone calls during the course of the court-approved wiretap. Minimization is required by 18 U.S.C. § 2518(5).[2] As a result of the alleged failure, it is asserted that the motion to suppress evidence gained through the interception of telephone calls should have been granted.

The starting point for review of the adequacy of minimization efforts is an examination of the reasonableness of the agents' efforts to refrain from monitoring conversations deemed nonpertinent to the investigation. *See Scott v. United States*, 436 U.S. 128, 139, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978); *United States v. Apodaca*, 820 F.2d 348, 350 (10th Cir.), *cert. denied*, 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 202 (1987). Reasonableness must be determined from the facts of each case. *United States v. Hyde*, 574 F.2d 856, 869 (5th Cir.1978).

We review this issue from two perspectives. First, we examine the general minimization effort involved in the wiretap of Robert Moats's telephone.[3] Next, we look at the particular efforts to minimize made specifically with regard to defendant.

▮ The general wiretap of Moats's telephone complied with § 2518(5). During the

---

2. Section 2518(5) provides in pertinent part that "every order and extension thereof ... shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception...."

3. Although we see a potential standing problem were appellant to base his appeal on the minimization efforts of the agents for telephone calls in which he was not involved, such is not the case here. Appellant relies primarily on the interception of his eight telephone calls. *Cf. United States v. Abascal*, 564 F.2d 821, 827 (9th Cir.1977) (court need not address standing issue when all calls during a wiretap could have been intercepted consistent with minimization requirements). We are convinced that no minimization problem exists as to the general wiretap, and we do not reach any issue of standing in this regard.

wiretap, 1643 interceptions took place. One hundred sixty-three of these calls—ten per cent—were minimized. If we subtract pertinent calls and misdialed calls, neither of which need to be minimized, we are left with 537 telephone calls, or an approximate thirty per cent minimization effort. If we further subtract the calls deemed nonpertinent which lasted less than two minutes, which we think is appropriate, *see Apodaca,* 820 F.2d at 348, 350 n. 3; *cf. United States v. Losing,* 560 F.2d 906, 909 n. 1 (8th Cir.1977), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1978) (interception of the first two-three minutes of calls in certain conspiracy investigations complies with § 2518(5)), we are left with an approximate minimization effort of seventy per cent.

We see nothing which indicates that these statistics are anything short of reasonable.

Next, we turn to minimization as it relates specifically to defendant. We believe this to be the primary inquiry for this court as we consider minimization and appellant's case. Here, the question is whether such efforts were reasonable despite the fact that none of the eight calls involving defendant was minimized, with only two of the eight deemed pertinent by the investigation agents.

Defendant draws our attention to but one telephone call of the eight intercepted involving him as being offensive to the minimization requirements of § 2518(5). Although transgression of minimization requirements on a single call in some future case might be enough to establish a violation of the statute,[4] a review of the totality of the circumstances does not indicate anything about this call so questionable as to require us long to ponder the question.

We turn then to the call which was intercepted on June 9, 1987, day one of the court-approved wiretap. Detective Thomas R. Fisher, Denver Police Department, testified that the call, although "innocuous," was not minimized. Fisher testified that the call was not minimized because it was received at the beginning of the wiretap when monitors were attempting to learn and identify code words.

■ It has been recognized that monitors may need to listen for longer periods of time in the early stages of such investigations in order to determine identity of speakers and significance of conversations. *See Scott,* 436 U.S. at 141, 98 S.Ct. at 1725. We find nothing which indicates that the district court did not carefully consider the minimization issue in the suppression hearing, nor do we see anything clearly erroneous about the trial court's determination that minimization efforts were reasonable.

Once the government has made a prima facie showing of reasonable minimization, the burden then shifts to the defendant to show more effective minimization could have taken place. *United States v. Armocida,* 515 F.2d 29, 45 (3d Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). The defendant has failed to point to any specific way in which more effective minimization could have taken place, short of minimizing the particular call in question on the first day of the wiretap. Such ordered conduct suggested ex post facto is not required of law enforcement officials by the statute.

Law enforcement officers need reasonable latitude to pursue investigatory techniques in order to uncover surreptitious criminal activity. In this information age, with the potential for the planning and the perpetration of criminal activities via telephones and other communications devices so great, procedures exist whereby investigators may go to a United States district judge and upon a showing of probable cause gain temporary permission to monitor the telephone calls of individuals believed involved in criminal activity. *See, e.g.,* 18 U.S.C. § 2518. If the courts were to find the facts at bar represented unreasonable conduct, it might serve to handcuff law enforcement personnel. *See United States v. Cox,* 567 F.2d 930, 933 (10th Cir.

---

4. *But see United States v. Lawson,* 780 F.2d 535, 540 (6th Cir.1985) (citing *United States v. Dorfman,* 542 F.Supp. 345, 391 (N.D.Ill.), *aff'd in part and rev'd in part on other grounds,* 690 F.2d 1217, 1230 (7th Cir.1982)) (pattern of abuse required to violate minimization requirements).

1977), *cert. denied,* 435 U.S. 927, 98 S.Ct. 1496, 55 L.Ed.2d 522 (1978) (an overly restrictive interpretation of the minimization requirement could make it impossible to use this device in connection with the investigation of organized criminal conspiracies). This we decline to do.

### III. *Motions for Acquittal.*

 *(a) Conspiracy Count.* Appellant next asserts that the prosecution failed to prove that he had knowledge of the basic elements of the conspiracy to distribute cocaine. The argument is therefore made that the denial of the motion for acquittal was error and must lead to reversal.

As stated, there was testimony by Moats that appellant actually sold cocaine for him and knowingly allowed cocaine to be stored in his apartment. In criminal cases, there is a single test that applies in reviewing the sufficiency of the evidence. "The evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Hooks,* 780 F.2d 1526, 1531 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986).

" 'The connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt.' " *United States v. Savaiano,* 843 F.2d 1280, 1294 (10th Cir.) (quoting *United States v. Batimana,* 623 F.2d 1366, 1368 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980)), *cert. denied,* —— U.S. ——, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988). A jury could quite rationally make the inference that an individual who sells and stores cocaine for someone he knows to be a drug dealer is aware of the nature of the dealer's business. Although a jury could also conclude otherwise, the role of this court is not to second-guess such a finding.

 *(b) Telephone Count.* With regard to the telephone-use count and the motion

for acquittal, as mentioned, there was admitted into evidence a telephone call between Moats and appellant on June 10, 1987, during which discussion took place involving the code word "plant," which Moats testified signaled Moats's desire to bring his cocaine down to appellant's apartment. "In order to obtain a conviction under 21 U.S.C. § 843(b), the government must prove (1) knowing or intentional (2) use of a communications facility (3) to commit, cause or facilitate the commission of a drug felony." *United States v. Johnstone,* 856 F.2d 539, 542–43 (3d Cir.1988). The evidence of actual use of the telephone in this conversation is enough to satisfy the government's burden here. *See, e.g., United States v. Watson,* 594 F.2d 1330, 1343 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979).

On the evidence presented, it is reasonable to conclude that defendant's telephone conversation of June 10, 1987 satisfied all necessary elements. When defendant utilized the telephone to converse with Moats about a "plant" (box of cocaine) which Moats wished to bring to defendant's apartment, criteria one and two were clearly satisfied. Furthermore, in allowing the use of his residence for the purpose of cocaine storage, defendant clearly "commit[ted], cause[d], or facilitate[d] the commission of a drug felony." *Johnstone,* 856 F.2d at 542–43. Therefore, viewing the conspiracy and telephone use motions for acquittal in the light most favorable to the government, as we must, we believe a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Hooks,* 780 F.2d at 1531.

### IV. *Rebuttal Testimony.*

Next, appellant argues that the admission of testimony by defendant's landlady that defendant paid his rent at certain times with large amounts of cash was prejudicial in excess of probative value. The prosecution offered this testimony to rebut appellant's claim that he never agreed to Moats's storing cocaine in his apartment.

 Although we do not find the rebuttal testimony particularly probative on the

storage issue, we also do not find it irrelevant. The admission of rebuttal testimony rests within the sound discretion of the trial judge. *United States v. Posey*, 647 F.2d 1048, 1052 (10th Cir.1981). While this evidence may be somewhat tenuous, its admission does not constitute an abuse of discretion since it was offered to rebut defendant's denial of an agreement to store cocaine. *See, e.g., United States v. Seely*, 570 F.2d 322, 324 (10th Cir.1978). Even assuming that the admission of the rebuttal testimony was erroneous, it was not so prejudicial as to warrant reversal, given the other evidence in the case. *See United States v. Delvecchio*, 816 F.2d 859, 864 (2d Cir.1987); Fed.R.Crim.P. 52(a).

## V. *Jury Instructions.*

Finally, appellant argues that the instruction to the jury on aiding and abetting was erroneous because it did not include the necessary element that the appellant *knew* of the existence of the conspiracy at the time of his acts.

It is fundamental that an essential element of aiding and abetting a conspiracy is that the defendant have knowledge of the conspiracy's existence at the time he performs acts which aid the conspiracy. *United States v. Galiffa*, 734 F.2d 306, 309–10 (7th Cir.1984). We therefore agree that were we to find such a lack of knowledge, we would be bound to remand.

The following instructions, or parts thereof, are relevant to the inquiry before us.

No. 19

With respect to each defendant, the Government must prove the following elements beyond a reasonable doubt to establish the conspiracy charged:

1. a conspiracy, as defined in this instruction, existed;

2. the defendant knew at least the essential objectives of the conspiracy; and

3. the defendant knowingly and voluntarily became a part of the conspiracy.

. . . . .

No. 23

In order to aid and abet another to commit a crime, it is necessary that the accused willfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about; that is to say, that he willfully seek by some act of his to make the criminal venture succeed.

No. 24

Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant aided and abetted the crime, unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

No. 25

The Court has ruled as a matter of law that Instructions Nos. 22, 23, and 24 apply only to Count One [conspiracy count] and not to Counts Four, Five, and Fourteen [other counts] of the indictment.

The focus of appellant's complaint involves Instruction No. 23, the aiding and abetting instruction. Appellant contends it was error for the court not to specifically instruct the jury that the "criminal venture" referred to in Instruction No. 23 was the crime of conspiracy to distribute cocaine. Absent such an instruction, argues appellant, a reasonable jury could have found him guilty of conspiracy to distribute cocaine even if he had no knowledge concerning any conspiracy to distribute cocaine. "The jury could reasonably have concluded that a defendant who merely associated himself with the criminal venture of possessing cocaine would by operation of the complicity instruction be a complicitor to the offense of conspiracy to distribute cocaine," argues defendant in his brief.

■ We disagree. Although the instruction might have been tailored to be more precise, jury instructions are not mathematical equations to be computed with rigid formality. So long as the relevant instructions on the whole offered the jury an accurate statement of the law—which we believe was the case here—we will not dis-

turb the district court's determination on instructions. *See United States v. Cardall*, 885 F.2d 656, 673 (10th Cir.1989).

Our standard of review is not whether an instruction was faultless in every respect, but whether the jury, considering the instructions as a whole, was misled. " 'Thus, only in those cases where the reviewing court has a substantial doubt whether the jury was fairly guided in its deliberations should the judgment be disturbed.' " *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 174 (10th Cir.1982) (quoting *Mid Texas Communications v. American Tel. & Tel. Co.*, 615 F.2d 1372, 1390 n. 16 (5th Cir.), *cert. denied*, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980)).

The government maintains that Instruction No. 23 at a minimum implicitly requires a finding by the jury that defendant had knowledge of the existence of the conspiracy. In support of this position, the government points to Instruction No. 25 which limited Instruction No. 23 to the conspiracy charge.

Since the jury was instructed that the aiding and abetting language of Instruction No. 23 applied *specifically* to the conspiracy count, we do not think it unreasonable to assume that the jury understood that if it were to find appellant guilty of aiding and abetting a conspiracy, it was essential that it determine that defendant was aware of the conspiracy.

Instruction No. 24 was also limited specifically to the conspiracy charge, and we believe this further buttresses the government's position. This instruction, as we read it, requires the jury to find that a defendant is an aider and abettor only if he is a *participant* and "not merely a knowing spectator." In order to participate and be more than a knowing spectator, we believe one must be aware of the existence of the underlying criminal venture, in this case conspiracy to distribute cocaine.

We therefore believe, looking at the instructions "as a whole," *id.*, that the average juror would conclude that the criminal venture involved was conspiracy to distribute cocaine, not the simple possession of cocaine. We find no likelihood that the jury was misled.

 Assuming arguendo, however, that the instruction was error, the question is whether prejudice to appellant resulted therefrom. *See Cardall*, 885 F.2d at 673. Given the evidence at trial, including testimony that the defendant stored and sold for, purchased from, and used cocaine with Moats, as well as his knowledge that Moats was a cocaine dealer, we find no such prejudice. *See* Fed.R.Crim.P. 52(a). We believe appellant was convicted by a jury based on evidence which led it to believe either that appellant was a conspirator himself, or that he was so active in, and cognizant of, Moats's illicit activities as to be convicted for aiding and abetting the conspiracy.

For the reasons set out above, the judgment of the district court is affirmed.