**UNITED STATES of America, Plaintiff,**

v.

**Tracy D. WRIGHT, Timothy Jay Cline, a/k/a "Pony," Charles Williams Hopkins, and Rhonda L. Hibbard, Defendants.**

Nos. 00–40024–02–SAC, 00–40024–3– SAC, 00–40024–06–SAC and 00–40024–10–SAC.

United States District Court, D. Kansas.

Sept. 19, 2000.

Timothy Jay Cline, Quapaw, OK, pro se.

Charles William Hopkins, Galena, KS, pro se.

Rhonda L. Hibbard, Baxter Springs, KS, pro se.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the defendant Rhonda Hibbard's Motion to Compel Production of Progress Reports and Daily Logs (Dk.275); the defendant Timothy Jay Cline's Motion to Join (Dk.276); the defendant Tracy D. Wright's Motion to Join (Dk.282); and the defendant Charles William Hopkins' Motion to Join (Dk.298). The government has filed a consolidated response opposing the motion to compel production of the requested reports and logs. (Dk.288). On September 6, 2000, the court heard oral argument on these motions. With the additional information learned from that proceeding, the court is ready to rule.

### INDICTMENT

The sealed indictment filed March 16, 2000, charges nineteen defendants with drug trafficking offenses. Count one charges all nineteen defendants with conspiring from sometime before June 21, 1999, to sometime after February 27, 2000, to manufacture and distribute in excess of one kilogram of methamphetamine in violation of 21 U.S.C. § 846. Count two charges the defendant Timothy Jay Cline with having violated 21 U.S.C. § 841(d)(2) by possessing on December 16, 1999, approximately two kilograms of pseudoephedrine while knowing or having reasonable cause to believe it would be used to manufacture a controlled substance. Count three charges that on January 26, 2000, the defendants Johnny Shane Wright and Michael W. Hopkins possessed with the intent to distribute approximately 53 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Count four charges that on January 26, 2000, the defendant Johnny Shane Wright possessed a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

### MOTIONS TO JOIN

The court grants the defendants' motions to join the defendant Hibbard's motion to compel on the conditions expressed in the court's Criminal Procedural Guidelines § I, ¶ F. In that regard, the defendants Tracy Wright and Timothy Cline note that calls on their home telephone calls were among those intercepted by the government. Based on information from the government, the defendant Charles Hopkins asserts the intercepted calls includes evidence against him.

### MOTION TO COMPEL

A. *Factual Background*

As part of its investigation leading to this indictment, the government sought and received permission to intercept wire communications on five separate telephone lines: (1) the residential telephone of Shane and Tracy Wright; (2) a cellular telephone subscribed to Miste Alartosky; (3) a cellular telephone subscribed to Johnny Wright; (4) the business telephone for Biker's Dream; (5) the residential telephone of Timothy and Janet Cline.

In the orders authorizing the interceptions or extending the interceptions, there appears the requirement "that all monitoring of wire communications intercepted be limited to those communications relevant to the pending investigation, in accordance with the minimization requirement of Chapter 119 of Title 18, United States

Code." (Dk.275, Ex. B, p. 6). The order also provides that, "[i]f the conversation is minimized, the monitoring personnel shall spot check to insure that the conversation has not turned to criminal matters." *Id.* The order further directs the government applicant to provide the court with progress reports every ten days that show "what progress has been made toward the achievement of the authorized objective and the need for continued interception." *Id.*

In its written response, the government represents the agents monitoring the telephone calls followed a certain procedure in gathering and recording the information. Following a call, the agents would complete a "Monitor Log Sheet"[1] that recorded the pertinent information, including a summary of the conversation. One of the lead agents then regularly transferred all information from the monitor logs into a computer database known as "Pen–Link." This downloading of the logs was usually done daily depending on the agents' work schedules. Using the "Pen–Link" database, agents frequently generated reports, known as "line sheets," for the prosecutor/applicant. According to the government, the line sheets typically contained:

> a summary of all calls received or placed during the reporting period (such as the previous day, the previous weekend, etc.), including an assigned call number, the time and duration of call, whether the call was incoming or outgoing, the number of the originating or destination telephone, subscriber information of the calling or receiving party, whether the call was minimized and the monitoring agent's summary of the call.

(Dk.288, p. 3). The prosecutor/applicant destroyed his copy of the line sheets after reviewing them. The Pen–Link database still exists, and the information in it can be retrieved according to the different fields and printed.

The government represents the following procedure was used in the completing its progress reports to the court. The prosecutor/applicant, taking information from the line sheets provided him, summarized the monitoring activities for the week and then described the current status of the interception efforts and investigation. This information was put into a written report that was then delivered weekly to the judge issuing the warrants.

### B. Relevant Law

#### 1. Minimization

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, generally prohibits the government from conducting wiretap investigations without first obtaining a court order issued upon a judicial determination of probable cause. Title III specifies that such judicial orders contain certain provisions, including a requirement that the government minimize the interception of communications unrelated to the illegal activity specified in the application. *See* 18 U.S.C. § 2518(5); *United States v. Killingsworth,* 117 F.3d 1159, 1162 (10th Cir.), *cert. denied,* 522 U.S. 961, 118 S.Ct. 393, 139 L.Ed.2d 307 (1997). A wiretap order is valid for no more than thirty days, but a court may extend its order upon an application for extension. An extension is granted only if the application meets all the same requirements demanded of the original application and the court makes all the same findings required for the initial order.

Title III provides that "[a]ny aggrieved person ..., may move to suppress the contents of any wire or oral communication intercepted" under Title III. 18 U.S.C. § 2518(10)(a). The Supreme Court construes "aggrieved person" in accordance with existing Fourth Amendment

---

1. During oral argument, the court recessed for the government's attorney to telephone a case agent to learn whether any copies of monitor log sheets still exist. The prosecutor reported that two copies of the log sheets exist. One copy is sealed with the court's other wiretap records from this investigation, and another copy is the possession of the government.

standing principles. *Alderman v. United States,* 394 U.S. 165, 175 n. 9, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Thus, an "aggrieved person" includes a party or participant to the intercepted wire communications, *United States v. Johnston,* 146 F.3d 785, 793 (10th Cir.1998), *cert. denied,* 525 U.S. 1088, 119 S.Ct. 839, 142 L.Ed.2d 694 (1999), as well as the person on whose premises the intercepted conversation occurred, "whether or not he was present or participated in those conversations." *Alderman,* 394 U.S. at 176, 89 S.Ct. 961; *United States v. Kelley,* 140 F.3d 596, 604 n. 7 (5th Cir.), *cert. denied,* 525 U.S. 908, 119 S.Ct. 247, 142 L.Ed.2d 203 (1998).

██ Pursuant to the minimization requirement, "[i]ntercepts must be 'conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter.... ' " *United States v. Earls,* 42 F.3d 1321, 1325 (10th Cir.1994)(quoting 18 U.S.C. § 2518(5)), *cert. denied,* 514 U.S. 1085, 115 S.Ct. 1800, 131 L.Ed.2d 727 (1995). This requirement does not mean the government must eliminate altogether the interception of non-pertinent calls. *Scott v. United States,* 436 U.S. 128, 140, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). "The Supreme Court has held that this provision does not create an 'inflexible rule of law,' but rather demands an evaluation of the 'facts and circumstances of each case.' " *United States v. Killingsworth,* 117 F.3d at 1165 (quoting *Scott v. United States,* 436 U.S. at 139–40, 98 S.Ct. 1717). The "[d]etermination of proper minimization is analyzed under a reasonableness standard." *Earls,* 42 F.3d at 1325 (citing *Scott v. United States,* 436 U.S. at 137, 139–40, 98 S.Ct. 1717). Specifically, the court examines "the reasonableness of the agents' efforts to refrain from monitoring conversations deemed nonpertinent to the investigation." *United States v. Willis,* 890 F.2d 1099, 1101 (10th Cir.1989).

[4, 5] Several general rules have emerged in evaluating an agent's reasonableness. "[P]ertinent calls and misdialed calls" need not be minimized. *Id.* at 1102.

As emphasized in *Scott,* it is important to consider the " 'circumstances of the wiretap' at issue rather than the absolute percentage of irrelevant calls intercepted." *Killingsworth,* 117 F.3d at 1165 (quoting *Scott,* 436 U.S. at 139–40, 98 S.Ct. 1717). Consequently, "[t]he interception of non-pertinent calls does not automatically indicate a failure to meet the minimization requirement." *United States v. Earls,* 42 F.3d at 1325 (citation omitted). "When the investigation involves a widespread conspiracy, 'more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise.' " *Earls,* 42 F.3d at 1325 (quoting *Scott,* 436 U.S. at 140, 98 S.Ct. 1717). The Supreme Court also has recognized "that officers should be given some leeway at the early stages of investigation where it is difficult to determine which calls are relevant and which are irrelevant." *Killingsworth,* 117 F.3d at 1166 (citing *Scott,* 436 U.S. at 141, 98 S.Ct. 1717). Consequently, the interception of the first two to three minutes of nonpertinent calls may be proper, particularly during the early period of the investigation when agents are trying "to determine identity of speakers and significance of conversations." *Willis,* 890 F.2d at 1102; *see Earls,* 42 F.3d at 1325. For that matter, short calls lasting less than two minutes are generally not scrutinized for minimization. *United States v. Pichardo,* No. 97–CR–233, 1999 WL 649020, at *5 (S.D.N.Y. Aug.25, 1999) (citing in part *United States v. Capra,* 501 F.2d 267, 275 (2nd Cir.1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975)); *see United States v. Apodaca,* 820 F.2d 348, 350 n. 3 (10th Cir.), *cert. denied,* 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 202 (1987).

██ The Tenth Circuit articulated in *Willis* the procedure for determining the reasonableness of efforts made to avoid monitoring non-pertinent calls. The government initially makes a prima facie showing of reasonable minimization. If accomplished, the burden "shifts to the defendant to show more effective mini-

mization could have taken place." 890 F.2d at 1102. Courts apply a similar shifting burden procedure in deciding whether to conduct an evidentiary hearing: "[w]here the government makes a prima facie showing of compliance with the statute, and defendant fails to overcome that showing by demonstrating 'that a substantial number of nonpertinent conversations [have] been intercepted unreasonably,' courts generally will deny a minimization hearing." *United States v. Pichardo,* 1999 WL 649020, at *5 (quoting *United States v. Cirillo,* 499 F.2d 872, 881 (2nd Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974)); *see United States v. Parks,* No. 95–CR–510, 1997 WL 136761, at *16 (N.D.Ill. Mar.24, 1997) (citing *United States v. Angiulo,* 847 F.2d 956, 980 (1st Cir.), *cert. denied,* 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 332 (1988); *United States v. Giacalone,* 853 F.2d 470, 482–83 (6th Cir.), *cert. denied,* 488 U.S. 910, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988)), *aff'd,* 207 F.3d 910 (7th Cir.2000), *petition for cert. filed,* —— U.S.L.W. —— (Jun. 19, 2000) (No. 99–10055).

### 2. Discovery

Only a few courts have issued written decisions on what documents are discoverable in advance of anticipated minimization challenge. Of the relevant cases cited by the parties, most deal only with the discovery of progress reports and presume the government's prior disclosure of the agents' handwritten monitor logs. Because the limited case law does not submit to a meaningful summary, the court reserves its analysis for the discussion and holding section.

### C. Overview of Arguments

The defendant Hibbard seeks an order compelling the government to produce progress reports or ten-day reports and monitor log sheets on the wire communications intercepted in this case. The defendant contends progress reports "provide information regarding the malfunction of the equipment, whether minimization procedures were followed and how they were followed as well as serving as the basis for extensions of the wiretaps." (Dk.275, p. 11). During oral argument, Hibbard's counsel essentially conceded for purposes of any minimization challenge that the progress reports are a mere summary of the information otherwise contained on the monitor log sheets. The defendant Hibbard, however, also contends that without the progress reports she would be denied "a complete and accurate record as to what information was provided by the Government to the issuing court." *Id.*

The monitor log sheets, according to the defendant Hibbard, are "the only source of information regarding the time a call was received, whether the call was minimized, the number of times a call was minimized, the length of minimization, the phone line being used by the other party and total length of time of the call." *Id.* at 12. The tape recordings and transcripts do not reveal whether a call was minimized, whether the call was deemed relevant, and the number of times minimized. Because the monitor log sheets are what the officers prepared contemporaneously as a record, in part, of their efforts at minimization, the defendants seek these original log sheets rather than a printout from the Pen–Link database. The defendants say they should not be asked to assume the government correctly downloaded the information from the log sheets into the database. In short, the monitor log sheets are "the only source of information upon which a defendant may challenge minimization." *Id.*

The government opposes the motion contending first that it has disclosed already more than required by law. The government argues its full compliance with 18 U.S.C. § 2518(9) in having provided the defendants with copies of the wiretap applications, affidavits submitted in support of the applications, and the orders authorizing the respective wiretaps. The government represents it also has given the defendants "access to almost seven hundred tape recordings of the wiretaps, along with transcripts" of all calls on the first

three lines and all pertinent calls on the other two lines. (Dk.288, p. 8). In addition, the government says it has offered to provide the defendant Hibbard with a Pen–Link printout of "*all* conversations (both pertinent and non-pertinent) in which she was either intercepted or even mentioned" and extended a similar offer to the defendant Timothy Cline. According to the government, both defendants rejected these compromise discovery offers. While admitting it has not provided the defendants "with sufficient information to avoid" a minimization hearing, the government anticipates releasing this information when the relevant time for the minimization hearing approaches.

### D. *Discussion and Holding*

#### 1. *Progress Reports*

■ Courts generally recognize that a defendant's challenge to minimization does not depend on these reports. For example, in *United States v. Orozco,* 108 F.R.D. 313 (S.D.Cal.1985), the district court denied the defendants' discovery request for the progress reports:

> [D]isclosure of progress reports is not necessary in order to determine whether the government complied with the statutory requirements of 18 U.S.C. § 2510, *et seq.* Progress reports are, for the most part, a summary of information already provided to defendants, i.e. the tapes, summaries and logs. Those items already provided to defendants are the original and best sources of information regarding statutory compliance.
>
> . . . .
>
> Addressing defendants' claims that progress reports might contain *Brady, Jencks* or Rule 16 material, it must be remembered that such reports are, for the most part, summaries of interceptions and do not provide any statements or exculpatory information not also required to be disclosed in its original form.

108 F.R.D. at 316; *see also United States v. Birdman,* No. 92–00133–07, 1992 WL 203318, at *1 (E.D.Pa. Aug. 14, 1992).

The district court in *United States v. Marchman,* 399 F.Supp. 585, 586 (E.D.Tenn.1975), similarly concluded: "it appears that access to these [progress] reports is unnecessary since defendant has been given access to the Application and Order and has had the opportunity to listen to all of the tapes of the intercepted communications." Prepared as a summary of information to assist the court in judging compliance with its authorization order, progress reports do not provide a defendant with any original information beyond what can be found in the tapes, transcripts, and monitor log sheets. *See Orozco,* 108 F.R.D. at 316. Under the facts of our case, the progress reports are really a summary of a summary, that is, they are the prosecutor's summary of the relevant line sheets which, in turn, are a periodic summary of the monitor log sheets.

Courts have not required disclosure of these reports out of a defendant's need to challenge the factual basis underlying authorization of the wiretaps. "The applications for orders [or extensions] authorizing interception are the best sources of information to bolster an argument that the government lacked initial cause to seek such orders." *Orozco,* 108 F.R.D. at 316. Having been provided with the applications, the defendants already possess the best source of information provided by the government to the issuing court. Following the convincing rationale in the decisions cited above, the court denies the defendants' discovery request for progress reports.

#### 2. *Monitor Log Sheets*

■ The government contends the monitor log sheets, as well as the line sheets generated from the Pen–Link database, amount to a compilation of call logs that are shielded from discovery pursuant to Fed.R.Crim.P. 16(a)(2) and cites *United States v. Nakashian,* 635 F.Supp. 761, 774 (S.D.N.Y.1986), *rev'd on other grounds,* 820 F.2d 549 (2nd Cir.), *cert. denied,* 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 392 (1987), in support of its argument. The

court, however, is not persuaded by the summary conclusion in *Nakashian* that wiretap logs are "specifically exempted from discovery" pursuant to Rule 16(a)(2). Nor does the case law cited in that decision add much weight to its conclusion.[2]

The case law shows that the defendants and the district courts generally gain access to information that is only available from monitor log sheets or related database printouts in addressing and deciding minimization challenges, in particular, in arriving at the percentages of non-pertinent calls and minimized calls. *See, e.g., United States v. Giacalone*, 853 F.2d 470, 482–83 (6th Cir.1988); *United States v. Scully*, 546 F.2d 255, 262 (9th Cir.1976), *vacated on other grounds*, 430 U.S. 902, 97 S.Ct. 1168, 51 L.Ed.2d 578 (1977); *United States v. Losing*, 539 F.2d 1174, 1179–80 (8th Cir.1976); *United States v. Pichardo*, 1999 WL 649020, at *6; *United States v. Zambrano–Sanchez*, No. 97–20067, 1998 WL 59473, at *1 (D.Kan. Jan.14, 1998); *United States v. Parks*, 1997 WL 136761, at *11–*12; *United States v. Orozco*, 108 F.R.D. at 316. The government narrowly reads this body of cases as going to what the government must provide in order to avoid a minimization hearing as opposed to what the law requires in discovery. Conceding that a hearing may be necessary if it does not disclose additional information, the government wishes to delay its disclosure until the issue of minimization hearings becomes relevant.

■ Though the government may be content to wait before disclosing this additional information, the court believes what must be produced and when it should be produced are issues fully committed to this court's sound discretion. *Cf. Alderman v.*

*United States*, 394 U.S. at 185, 89 S.Ct. 961 (when the issue is whether an illegal wiretap has tainted the government's investigation or case, it is "left to the informed discretion, good sense, and fairness of the trial judge" to decide what surveillance records are needed by the defendant in making his arguments). The government offers no persuasive grounds for its delay in providing what it concedes is necessary information for deciding a minimization challenge. In the interests of fairness and expedition, the court will direct the government to provide the moving defendants with the monitor log sheets, with proper redactions, within twenty days of this order.

■ The court concurs with the government that an agent's summary of the call or conversation is protected from discovery, because it is the officer's mental impressions amounting to work product and is an internal document solely prepared for the criminal investigation under Rule 16(a)(2). The defendants have not shown that the information typically found in this segment of a monitor log sheet would be material to their minimization challenge. As far as a call summary containing discoverable information under *Brady* or *Giglio*, the court expects the government will be mindful of these other guiding principles of discovery when it redacts the call summary from a monitor log sheet. Outside of these discovery principles, the decision to redact the call summaries obviously remains a matter within the government's discretion.

The court appreciates the additional burden placed on the government in producing the monitor log sheets rather than a printout from its Pen–Link database.

2. In *United States v. Spagnuolo*, 549 F.2d 705 (9th Cir.1977), the defendant sought F.B.I. investigative files in order to show that the criminal investigation had been tainted by illegal wiretap evidence. The case of *United States v. Payden*, 613 F.Supp. 800, 820 (S.D.N.Y.1985), deals with "telephone records" and *United States v. Smith*, 405 F.Supp. 144, 145 (E.D.Pa.1975), discusses the discovery of "surveillance reports." In addition, more recent decisions from the United States District Court for the Southern District of New York show that the government has included surveillance logs as part of what it represents to be the Rule 16 discovery provided to the defendant. *See, e.g., United States v. Martinez*, No. 94–CR–219, 1995 WL 10849, at *4 (S.D.N.Y. Jan.12, 1995); *United States v. Sanchez*, No. 92–CR–51, 1992 WL 295989, at *2 (S.D.N.Y. Oct.6, 1992).

The burden in this case, however, is not outweighed by the defendants' need to discover the information originally generated by officers to substantiate their minimization efforts. The defendants are entitled in this instance to view the original and best evidence of minimization, and the court will not require the defendants to assume the government correctly downloaded the information into its Pen–Link database. The court also encourages the government to provide any further information to these defendants it deems arguably relevant in the court's decision whether to conduct a minimization hearing.

IT IS THEREFORE ORDERED that defendant Rhonda Hibbard's Motion to Compel Production of Progress Reports and Daily Logs (Dk.275) is granted in part and denied in part, and that the government shall produce the monitor log sheets with any proper redactions of the call summaries within twenty days of this order;

IT IS FURTHER ORDERED that the defendant Timothy Jay Cline's Motion to Join (Dk.276), the defendant Tracy D. Wright's Motion to Join (Dk.282), and the defendant Charles William Hopkins' Motion to Join (Dk.298) are granted.